IN RE APPEAL NO. 653, September Term, 1975, from the District Court of Maryland, Montgomery County, Juvenile Division

[No. 89, September Term, 1975.]

*Decided March 4, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Paul Walter, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Paul M. Vettori, Assistant Attorney General,* on the brief, for appellant.

*Joseph M. Quirk* and *William F. Abell, Jr.,* with whom were *Heeney, McAuliffe, Rowan & Abell* and *Michael F. O'Connor* on the brief, for appellees.

*Amici Curiae* brief filed by Association for Retarded Citizens, *N. Gregory Silberberg* on the brief; by Legal Aid Bureau, Inc., *Albert J. Matricciani, Jr.* on the brief; and by Juvenile Law Clinic, *Peter S. Smith* on the brief.

ELDRIDGE, J., delivered the opinion of the Court.

On June 9, 10 and 11, 1975, the District Court of Maryland, Montgomery County, Juvenile Division (hereinafter referred to as the "juvenile court"),[1] issued orders committing twelve children to the custody of the Maryland Secretary of Health and Mental Hygiene for placement in psychiatric residential treatment facilities "separate from adult patients." The orders followed prior adjudications by that court that the children had been delinquent and/or in need of supervision and in need of assistance. None of the children had been adjudicated to be delinquent only.

The juvenile court's orders, mandating that the committed children be kept separate from adult patients, were based upon the court's interpretation of the statutory provisions relating to juvenile causes, Maryland Code (1974, 1975 Cum. Supp.), §§ 3-801 through 3-833 of the Courts and Judicial

---

1. *See* Maryland Code (1974, 1975 Cum. Supp.), § 3-801 (g) of the Courts and Judicial Proceedings Article.

Proceedings Article.[2] In an opinion on June 9, 1975, in one of the cases, the juvenile court stated:

> "The issue before the Court is whether a child ... can lawfully be housed with adult patients in a ward or unit of a hospital to which he is committed by the Court.

> "It is the opinion of the Court that a child cannot be so confined but must be placed by the Secretary of the Department of Health and Mental Hygiene in a ward or unit for children, separate from adult patients at the same hospital facility or similar appropriate hospital facility providing residential psychiatric treatment."

The juvenile court then reviewed the sections of the statute which prohibit the detention of allegedly delinquent children "in a jail or other facility for the detention of adults" (§ 3-815 (d)) and which prohibit the commitment or transfer of children "to a penal institution or other facility used primarily for the confinement of adults charged with or convicted of a crime" (§ 3-823 (a)). The court concluded:

> "There would appear to be no rational basis, in the Court's opinion, for precluding the confinement of a delinquent or alleged delinquent child in a jail with adults while permitting the mingling of children under eighteen years of age in a locked hospital ward with mentally disturbed adult

---

2. Prior to July 1, 1975, two separate statutory schemes governed juvenile causes in this State. Code (1974), §§ 3-801 through 3-842 of the Courts and Judicial Proceedings Article dealt with juvenile causes in Baltimore City and twenty-two of the twenty-three counties, and §§ 4-501 through 4-530 of the same Article pertained to juvenile causes in Montgomery County. See Matter of Trader, 272 Md. 364, 325 A. 2d 398 (1974). In 1975, effective July 1, 1975, the two separate statutory schemes were repealed, and a single juvenile law applicable to the entire State was enacted, Ch. 554 of the Acts of 1975, Code (1974, 1975 Cum. Supp.), §§ 3-801 through 3-833 of the Courts and Judicial Proceedings Article. The final orders of the juvenile court in the present cases were rendered after the effective date of Ch. 554, and therefore the provisions of the new law are controlling. Popham v. Conservation Comm., 186 Md. 62, 66, 46 A. 2d 184 (1946), and cases therein cited. However, as the court below and all of the parties to the present cases recognized, whichever law is applicable makes no difference, as the provisions of the old and the new law which are relevant to the issues here are essentially the same.

patients. The Court can only conclude that the Legislature, in keeping with the stated philosophy and purposes of juvenile proceedings ... , contemplated that any required institutional program of treatment, care and rehabilitation of juveniles would take place separate and apart from adult patients or prisoners."

The Secretary of Health and Mental Hygiene, who had not previously been a party to the proceedings, on June 16, 1975, filed a motion to set aside or modify the orders in the cases. The Secretary claimed that the orders, insofar as they directed that the juveniles be separated from adult patients, exceeded the statutory authority of the juvenile court. The Secretary also asserted that there were "insufficient separate psychiatric residential treatment facilities for adolescents, rendering it impracticable and/or impossible for the Secretary to comply with the orders." The court thereafter held hearings on the Secretary's motion at which several expert witnesses testified concerning the feasibility and desirability of separating adolescent patients from adult patients in mental health facilities with respect to both living quarters and treatment programs.

In an opinion and order dated July 2, 1975, the juvenile court reiterated its view that the "legislative intent" was that "any required institutional program of care and rehabilitation of juveniles would take place separate and apart from adult patients." The court denied the Secretary's petition to set aside or modify the prior orders, and "ordered that the Secretary of the Department of Health and Mental Hygiene provide the separation of juvenile and adult patients as hereinbefore ordered in these proceedings on or before September 1, 1975." The Secretary of Health and Mental Hygiene, in accordance with Code (1974, 1975 Cum. Supp.), § 3-832 of the Courts and Judicial Proceedings Article, took an appeal to the Court of Special Appeals from the orders entered in the consolidated cases on June 9, 10 and 11, 1975, and on July 2, 1975. This Court issued a writ of certiorari, prior to a decision by the Court of Special Appeals, to review the orders of the juvenile court.

The parties in this case, in debating the correctness of the juvenile court's orders mandating the separation of the juveniles from adult patients, have engaged in wide-ranging discussions of the constitutional separation of powers principle and the general scope of a juvenile court's authority in determining dispositions, directing programs of treatment and assuring that appropriate treatment is being provided. However, in our view, it is unnecessary for us in this case to deal with these matters, and we refrain from so doing. Instead, the issue which the juvenile court decided, and which we decide, is a narrow one of statutory interpretation. It is whether, as the court below held, the Legislature intended that juveniles committed to the custody of the Department of Health and Mental Hygiene for treatment in public mental health facilities be kept separate from adult patients, or whether, as the Secretary urges, the Legislature intended that after a juvenile is so committed, the initial determination to separate him from adult patients is within the discretion of the Department of Health and Mental Hygiene. We agree with the latter interpretation of the statute, and we therefore reverse the orders in these cases.[3]

The authority of the juvenile court to make a disposition, after a child has been adjudicated delinquent or in need of supervision or in need of assistance, is contained in Code (1974, 1975 Cum. Supp.), § 3-820 (b) of the Courts and Judicial Proceedings Article, which provides:

"(b) The overriding consideration in making a disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest. The court may:

"(1) Place the child on probation or under

---

3. Another question which is not here presented, and which we do not decide, is the scope of the court's authority in a specific case involving the placement of a child with adult patients where it is later claimed that such placement is detrimental to that particular child and has amounted to an abuse of discretion by the Secretary of Health and Mental Hygiene or his subordinates.

supervision in his own home or in the custody or under the guardianship of a relative or other fit person, *upon terms the court deems appropriate;*

"(2) Commit the child to the custody or under the guardianship of the Juvenile Services Administration, a local department of social services, *the Department of Health and Mental Hygiene,* or a public or licensed private agency." (Emphasis supplied.)

Nothing in this provision authorizing commitments to the Department of Health and Mental Hygiene suggests that the General Assembly intended to require the separation of adolescent from adult patients. With regard to the question of the juvenile court's authority initially to direct such separation, the language of § 3-820 (b) is quite significant. Subsection (1), authorizing the court to place the child on probation or under supervision in his home or under the guardianship of a relative or other person, further authorizes the court to specify such "terms [as] the court deems appropriate." On the other hand, subsection (2), empowering the court to commit a child to, *inter alia,* the Department of Health and Mental Hygiene, does not contain the authorization for the court to specify whatever terms it deems appropriate.

As previously pointed out, the juvenile court relied upon provisions of the statute requiring the separation of juveniles from adults under certain other circumstances. There are three such provisions. Section 3-815 (d), relating to pre-trial detention, provides that "[a] child alleged to be delinquent may not be detained in a jail or other facility for the detention of adults . . . ." Section 3-816 (c) states that "[a] child may not be transported together with adults who have been charged with or convicted of a crime . . . ." Section 3-823 (a), entitled "Limitations on place of commitment," is most pertinent. It provides:

"(a) A child may not be committed or transferred to a penal institution or other facility used primarily for the confinement of adults charged with or convicted of a crime . . . ."

All three of these sections only require the separation of children from adults charged with or convicted of crimes. Nevertheless, the court below concluded that there was no rational basis for prohibiting the confinement of children in a "jail" with adults while permitting the mingling of children in a hospital facility with "mentally disturbed adult patients."

In our view, however, the parts of the statute relied upon by the juvenile court lead to the opposite conclusion. The statutory provisions requiring the separation of children from adults under certain circumstances show that the Legislature was fully cognizant of the questions concerning the mingling of children with adults, addressed itself to the matter, and determined those particular situations when separation was required. The sections of the statute, and particularly § 3-823 relating to limitations on places of commitment, reveal that the Legislature intended to require the separation of children from adults only with respect to jails, detention centers and correctional institutions housing adults charged with or convicted of crimes. Since the Legislature expressly precluded the mingling of children and adults in specified situations, other preclusions on mingling children and adults should not, under settled principles of statutory construction, be read into the statute by implication. *State Insurance v. Nationwide,* 241 Md. 108, 117, 215 A. 2d 749 (1966). Rather, the clear inference from the statute is that there was no legislative intent to mandate the separation of children from adults in mental health facilities administered by the Department of Health and Mental Hygiene.

The provisions of the law relating to the facilities under the jurisdiction of the Department of Health and Mental Hygiene also support the view that the Legislature had no intention of mandating separate facilities for children and adult patients, and that the matter of separation was for the discretion of department officials. Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.), Art. 59, § 31 (a), lists the several public mental health facilities in the State, including the Springfield Hospital Center which is the facility involved in

the instant case. Neither that section nor any other section of the Mental Hygiene Article of the Code (Art. 59) suggests separate facilities for children and adult patients. Section 31 (a) specifies that the named facilities shall be "under the general jurisdiction" of the Commissioner of Mental Hygiene, who is a subordinate of the Secretary of Health and Mental Hygiene, Code (1957, 1971 Repl. Vol., 1975 Cum. Supp.), Art. 41, § 206; Art. 43, § 1F; Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.), Art. 59, §§ 4, 6, 7 and 8 (a). Section 32 (a) of Art. 59 provides that "[t]he superintendent of each public [mental health] facility shall have general supervisory powers . . . with respect to the facility that he governs." Section 8 (d) of Art. 59 states that the Commissioner of Mental Hygiene shall "generally supervise the administration of each public facility . . . and may determine admission criteria to such facilities." Similar statutory provisions exist as to the other types of facilities within the jurisdiction of the Department of Health and Mental Hygiene, vesting the authority in the Secretary, through his subordinates, to manage and control the facilities. *See* Code (1957, 1972 Repl. Vol.), Art. 52A, § 12 (facilities of the Juvenile Services Administration of the Department of Health and Mental Hygiene); Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.), Art. 59A, §§ 8 (c) and 18 (b) (mental retardation facilities).

As the authority to supervise and manage mental health facilities is vested solely with the officials of the Department of Health and Mental Hygiene, and as no statutory provision suggests that those officials must separate adolescents from adult patients, we believe that the matter is, at least initially, one of departmental discretion.

> *Orders of the District Court, Montgomery County, reversed, and case remanded for further proceedings consistent with this opinion.*
> *Respondents to pay costs.*