# ALFORD ROBUS CAREY, JR. *v.* STATE OF MARYLAND

[No. 728, September Term, 1978.]

*Decided September 6, 1979.*

The cause was argued before MOORE, MELVIN and MacDANIEL, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender, T. Joseph Touhey, District Public Defender,* and *Louis P. Willemin, Assistant Public Defender,* on the brief, for appellant.

*Sally B. Gold, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Deborah E. Jennings, Assistant Attorney General,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

The appellant, Alford Robus Carey, Jr., was found guilty of five counts of bribery (Md. Code Ann., Art. 27, § 23) and one count of extortion (Art. 27, § 562). His four day trial on these charges took place in December 1977, in the Circuit Court for Anne Arundel County before Judge E. Mackall Childs, presiding without a jury. After the completion of the trial on December 22, 1977, the judge took the case under advisement and on January 9, 1978, read and filed in open court a written 27½ page "Memorandum of Opinion" that reviewed in detail the voluminous evidence and set forth the verdicts and reasons therefor. Appellant was sentenced on February 27, 1978.

In this appeal, the appellant does not contest the sufficiency of the evidence either as to his criminal agency or the corpus delicti of the crimes for which he was convicted. He presents five questions for our consideration.

"1. Did the trial judge deny Appellant due process of law in failing to disqualify himself?

2. Did the trial court err in failing to dismiss the indictment as violative of a prior plea bargaining agreement?

3. Did the trial judge err in admitting testimony under the co-conspirator's exception?

4. Did the trial judge err in refusing to strike unsupported opinion testimony?

5. Did the trial court err in convicting Appellant of bribery and extortion for the same act?"

Our answer to each of the questions is "No." The judgments of conviction will therefore be affirmed.

# I

## *Due Process*

Appellant argues that because Judge Childs did not accede to his request to disqualify himself, he was denied due process. He argues that prior to the trial on the merits the judge "exhibited prejudice toward both appellant and his counsel" and that the judge harbored "a preconceived determination of Appellant's guilt" that deprived him "of a fair opportunity to present the issues and denied him the fair tribunal required by Due Process."

We note at the outset that with respect to the trial itself the appellant refers us to no comment, no ruling or any other evidence that would reflect the judge's alleged predetermination of appellant's guilt or that appellant was "denied a fair opportunity to present the issues." We also note that appellant was afforded the opportunity to remove the case to another jurisdiction for trial and that although he had initially prayed a jury trial he subsequently — *after* the judge refused to disqualify himself — elected a court trial and did not take advantage of the judge's offer to remove the case. We are not told by appellant why, if he was so concerned about the judge's alleged bias, he did not elect one or both of these alternatives that were available to him.

Where a defendant in a criminal case alleges prejudice or

bias as a ground for the judge to recuse himself, it is the defendant's burden to show that the judge by his words or actions has demonstrated a hostile feeling or spirit of ill will against him or his counsel of such a character as might prevent the judge from giving him a fair trial. See 46 Am. Jur. 2d, *Judges,* § 220 (1969). The burden borne by the defendant in this regard is a substantial one. This is so because of the "assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence." *State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970). See, also, *State v. Hutchinson,* 260 Md. 227, 271 A.2d 641 (1970). The appellant has failed to meet that burden in the case before us.

In ruling on the motion to disqualify himself, Judge Childs said:

> "This court has no disposition whatsoever as to Mr. Carey. I've never seen him before and couldn't care less to whether he prevails or fails to do so in this particular case. . . . I take a completely dispassionate view of the outcome of Mr. Carey's problems. . . . I think the testimony will stand on its own feet one way or the other; and frankly again I would reiterate that whether Mr. Carey is found guilty or innocent is no concern of mine. *I expect to call it as I see it;* and as of this point I see no reason whatsoever for disqualification." (Emphasis added).

Our review of the record, including Judge Childs's detailed memorandum opinion at the close of the case, convinces us that the judge did exactly what he said he would do, *i.e.,* "call it as I see it." We are not persuaded that he did otherwise, as alleged by the appellant, merely because he had found the appellant's co-defendant guilty in a prior non-jury trial. Participation in prior legal proceedings involving related parties or issues is simply not grounds for a judge to recuse himself. *United States v. Partin,* 552 F.2d 621 (5th Cir. 1977); *Laws and Dorman v. State,* 7 Md. App. 84, 253 A.2d 780 (1969). Nor are we persuaded otherwise by the fact that the judge acceded to the State's suggestion to grant a defendant in

another case a new trial and accept a plea of *nolo contendere* whereby that defendant received a suspended sentence for obstruction of justice (rather than perjury) so he would be available to testify for the State in the on-going investigation of the public school construction program. Appellant argues that this action by the judge "actively assisted the State in its prosecution of him". We note, however, that the would-be witness did not testify at appellant's trial on the merits. We also note that the action of the judge in granting the defendant a new trial in the other case took place on June 1, 1977, weeks after the appellant's originally scheduled trial date and after the State had made numerous attempts to bring the case to trial for which it was presumably fully prepared before June 1, 1977. It seems highly unlikely, therefore, that the judge's action did in fact assist the State in its case against the appellant. Moreover, even assuming the judge thought that his action would be helpful in ferreting out the truth, this is not to be equated with disqualifying bias or prejudice likely to prevent a fair trial. *See, United States v. Liddy,* 166 U.S. App. D. C. 95, 509 F.2d 428 (1974), *cert. denied,* 420 U.S. 911 (1975); *United States v. McCord,* 166 U.S. App. D. C. 1, 509 F.2d 334 (1974), *cert. denied,* 421 U.S. 930 (1975); *United States v. Haldeman,* 559 F.2d 31 (D.C. Cir. 1976); *compare, In Re Murchison,* 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955).

Appellant argues further that the trial judge's determination "to hold his ruling on appellant's pretrial motion to dismiss *sub curia* in order to thwart any interlocutory appeal and move the case immediately to trial" is another indication of the judge's bias or prejudice. We see no merit whatsoever to this argument. As a belated additional ground for the motion to dismiss the charges against him, appellant claimed that his trial was barred on double jeopardy grounds. When the judge decided to hold the matter *sub curia* until after trial on the merits, appellant appealed to this Court. It is true, of course, that denial of a motion to dismiss on double jeopardy grounds is immediately appealable, *Neal v. State,* 272 Md. 323, 322 A.2d 887 (1974), and that failure to rule on a motion bottomed on those grounds before trial

constitutes error, *Claybrooks v. State,* 36 Md. App. 295, 374 A.2d 365 (1977). As it turned out in this case, however, trial on the merits did not take place until after the double jeopardy claim had been rejected by this Court. *See Carey v. State,* 37 Md. App. 689, 379 A.2d 178 (1977), *cert. denied* December 5, 1977. In any event, Judge Childs's initial determination to hold the matter *sub curia* until after trial, does not, in our opinion, form the basis for his disqualification. "... [N]o deduction of bias and prejudice may be made from adverse rulings by a judge, whether they are right or wrong." 46 Am. Jur. 2d, *Judges,* § 221 (1969).

Finally, on the issue of disqualification, appellant argues that Judge Childs "exhibited hostility toward appellant's counsel during the course of the proceedings". Here, we are referred only to the fact that nearly four months before the trial of this case the judge had recused himself in an unrelated civil matter in which appellant's counsel represented one of the parties. The judge explained on the record his reasons for the recusement. While we agree that the record of pre-trial proceedings in this case does reflect a certain amount of mutual antipathy between the judge and defense counsel, we cannot say that so far as the judge was concerned there has been any showing of that degree of personal bias or prejudice toward defense counsel that would indicate the likelihood that the appellant would not receive a fair and impartial trial. "A judge may, with or without cause, cordially dislike and even distrust an attorney and yet be capable of doing exact justice towards his client." *Shakin v. Board of Medical Examiners,* 254 Cal. App. 2d 102, 62 Cal. Rptr. 274, 287, 23 A.L.R. 3d 1398, 1415 (1967), *app. dism'd and cert. denied,* 390 U.S. 410 (1968).

In sum, we conclude that none of the arguments advanced by the appellant, either alone or in combination, form the basis for holding that Judge Childs's failure to disqualify himself denied the appellant due process of law.

## II

### *The Prior Plea Bargaining Agreement*

The appellant was indicted in the present case on August

30, 1976. On November 15, 1976, he filed a motion to dismiss the indictment alleging the violation of a plea bargaining agreement in a prior case in which he had pled guilty to forgery and false pretenses. The charges in the prior case arose out of appellant's activities as Executive Director of the Interagency Committee on School Construction. They were unrelated to the charges in the present case. See *Carey v. State,* 37 Md. App. at 694. The appellant allegedly prepared and approved a false invoice in the amount of $22,105.19 dated *November 1, 1973* for work that had not been performed by a sub-contractor. Through various machinations he received the proceeds and used them to pay his personal debts. On *January 9, 1976,* after protracted negotiations, he entered a guilty plea to the prior charges pursuant to a plea bargaining agreement. The following language of the written agreement referring to the possibility of future prosecutions was ultimately agreed upon:

> "In closing, it is appropriate to place upon the record the precise limits of the State of Maryland's agreement not to seek further indictments against Defendant Carey. *This agreement extends only to the specific matters discussed in this exposition and to any other crimes based upon evidence already in the possession of and fully developed by the State of Maryland as of this date.* To the extent then that such additional criminal acts of Defendant Carey might be developed in the continuation of this investigation the State has given no assurances to him and expressly reserves the right to seek indictments and to prosecute for such acts." (Emphasis added.)

Appellant contends that the State's action in bringing the bribery and extortion charges after having entered into the plea bargain was a breach of the agreement and that the trial court erred in not granting his motion to dismiss the present indictment because of that breach. As we understand appellant's argument, it is that because the State was investigating bribery and extortion charges in connection

with the school construction program at the time of the plea bargain, the State is barred by the agreement from bringing the present indictment.

As we see it, the only issues presented by the agreement are: 1) Does the present indictment cover "specific matters" set forth in the "exposition" at the prior trial?, and 2) Is the present indictment based upon evidence that was in the State's possession and "fully developed" on January 9, 1976, the date of the guilty plea? The appellant does not argue the first issue. He argues, however, that the second issue should be answered in the affirmative. The answer depends upon the factual evidence. Both Judge Evans and Judge Childs, after extended hearings, determined the answer adversely to the appellant. Our review of the record leaves us unconvinced that these rulings were erroneous, much less *clearly* erroneous. We shall therefore not disturb them. Maryland Rule 1086.

### III

#### *The Co-Conspirator Exception*

At trial one of the State's principal witnesses was George W. Hargest who testified, over appellant's objection, as to what another person (John O. Bishop) had told Hargest concerning the bribery scheme involving the appellant. This testimony was admitted on the basis of the "co-conspirator exception to the hearsay rule". On appeal, appellant does not contest the validity of the general rule that statements made by one co-conspirator (Bishop) in furtherance of the conspiracy are admissible against another co-conspirator (the appellant). Nor does the appellant argue that there was no conspiracy shown. Nor does he question the applicability of the hearsay exception even though, as in this case, the defendant was not formally charged with conspiracy. What is argued here is that there is an exception to the general rule under which Hargest's hearsay testimony would otherwise be admissible. The appellant asserts on appeal that because the statute of limitations had run on the crime of conspiracy the hearsay testimony was inadmissible. Citing *United States*

*v. Klosterman,* 248 F.2d 191, 195 (3rd Cir. 1957) for the proposition that "evidence of conspiracy may not be introduced against a defendant who has been acquitted of the conspiracy charge", appellant asserts that because of the statute of limitations he "is in the same position as if he had been tried and acquitted of conspiracy" and therefore the hearsay testimony offered by Hargest should have been excluded.

The difficulty with this contention is that it was not made at the trial below. Although appellant did object to the hearsay testimony of Hargest, his counsel's stated ground for the objection was simply "inadequate foundation". Despite the trial judge's specific reference to the co-conspirator exception as the reason for admitting the testimony and the State's specific reference to the statute of limitations, appellant never once suggested to the trial judge that the general rule was inapplicable because of the passage of time. The trial judge, therefore, had no opportunity to rule on the issue now being raised in this appeal. Under the circumstances, the issue is not properly before us for review and is deemed to have been waived as a ground for the objection. See Md. Rules 761, 522 d, and 1085. *See, also, von Lusch v. State,* 279 Md. 255, 263, 368 A.2d 468 (1977).

## IV

### *Denial of Motion to Strike Accountant's Testimony*

Irving Machiz, a Certified Public Accountant, whose qualifications were not questioned by the appellant, testified that for the period in question he analyzed all of appellant's known sources of income, correlated the income to his bank deposit records, and determined that there were approximately $16,500 in "unexplained currency deposits by Mr. Carey". From documentary evidence before the court, he determined that these "unexplained deposits" corresponded both in time and approximate amount to the sums Hargest said he paid the appellant in furtherance of the bribery scheme. In cross examination, appellant's counsel challenged the accuracy of the $16,500 figure by attempting to show, in

a general way, that the $16,500 could have represented sums deposited by the appellant that he received from legitimate sources of which Machiz was unaware. Machiz admitted this possibility, but said he had labelled the $16,500 as "unexplained currency deposits" only after considering all evidence that was available to him — "primarily" the documentary exhibits that were already in the case. He conceded that his analysis was based "in part" upon evidence that was not before the court. He explained, however, that he used this other evidence in an attempt to identify or explain the source of all bank deposits made by appellant during the period in question. For example, he said he had "read transcripts of interviews of Mr. Carey by the State's Attorney and the State Police in this connection" and "also used information that Mr. Carey submitted when he applied for a loan in connection with the background, the possibility of having cash, so we could give him credit if we found evidence of it". He had earlier testified that, "All loans were credited."

At the conclusion of the State's case, appellant moved to strike all of Machiz's testimony on the ground, reiterated on appeal, that his "opinion" was "based upon documents and testimony that is not in evidence". Judge Childs denied the motion, saying "as far as I'm concerned he was basing his conclusion on documentary evidence that he had." We find no error in that ruling.

Actually, Machiz was not called upon to state and did not state an opinion that the $16,500 was bribe money. To the contrary, he testified that based on an accounting analysis of a variety of exhibits in evidence he was unable to explain the source of the $16,500 that appellant had deposited in his bank accounts during the period in question. He further testified, again from exhibits in evidence, that these sums ($16,500) appeared in appellant's bank accounts during the same period of time that Hargest had previously testified he had been paying bribes to the appellant in comparable amounts.

As we see it, the only effect of appellant's cross examination of Machiz was to raise the mere possibility that the $16,500, otherwise unexplained by the exhibits in evidence (and otherwise unexplained by any evidence offered by the

appellant), *could* have had a known non-culpable source. This is purely a matter of the weight of the evidence and, in our judgment, is not a basis for excluding Machiz's testimony in its entirety. This is not a case calling for the invocation of the general rule that an expert's *opinion* should not be admitted unless predicated upon facts in evidence or proffered to be proved. Compare *Noble v. Director,* 32 Md. App. 192, 359 A.2d 253 (1976).

## V

### *Bribery and Extortion Convictions*

Count Five of the indictment charged that on or about January 16, 1973, the appellant, in violation of Maryland Code, Article 27, Section 23, "did unlawfully and corruptly *demand a bribe,* fee, reward and testimonial, to wit: Seven Thousand Five Hundred Dollars ($7,500.00), the precise amount being unknown to the Grand Jurors, but said amount representing all or part of certain 'sales commission' checks to be drawn by Globe Industries, Inc., . . . payable to George W. Hargest, *for the purpose of influencing [the appellant] in the performance of his official duties . . .".* (Emphasis added.)

Count Thirteen of the indictment charged that appellant, in violation of Maryland Code, Article 27, Section 562,[1] on or about January 16, 1973, "feloniously and corruptly did *threaten* Vernon Morton, in his capacity as Vice President and agent of Globe Industries, Inc. . . . *to foreclose, prevent, and bar any contracts by the said Globe Industries, Inc.,* with the Public School Construction Program of the State of Maryland, thereby threatening to do injury to the property of said Globe Industries, Inc., *with the view . . . to extort and gain from the said Globe Industries, Inc., certain money, to wit: . . . $7,500.00 . . . ."* (Emphasis added.)

The trial court found appellant guilty of both counts. On

---

1. Art. 27, Section 562 provides in pertinent part:

"Every person who shall threaten . . . to do any injury to the person or property of anyone, with a view to extort or gain any money . . . shall be guilty of a felony . . . ."

appeal, appellant contends that his convictions of both counts "cannot stand" because "the offenses of Bribery and Extortion are mutually exclusive" and because "the finding of voluntary payment implicit in the conviction of Bribery is inconsistent with the finding of duress inherent in the conviction of extortion". Although this issue was not raised or decided below we shall, nevertheless, consider it here as it does not appear that precisely the same sentence was imposed for each of the two counts involved.[2] See *Slye v. State,* 42 Md. App. 520, 401 A.2d 195 (1979); *Brooks v. State,* 38 Md. App. 550, 552, 381 A.2d 718 (1978); *aff'd.* 284 Md. 416, 397 A.2d 596 (1979); *Rose v. State,* 37 Md. App. 388, 377 A.2d 588, *cert. denied,* 281 Md. 743 (1977).

We do not agree that the crimes charged in Count Five and Count Thirteen are "mutually exclusive" or, as implied by appellant, that convictions of both counts result in inconsistent judgments. The "bribery" charged in Count Five consisted of the "demand by a public official for money for the purpose of influencing [that official] in the performance of his official duties". This conduct is proscribed by Article 27, Section 23 of the Maryland Code. The "extortion" charged in Count Thirteen consisted of the *threat* "to do injury to the property of ... Globe Industries, Inc.", unless money was paid to the appellant. This conduct is proscribed by Article 27, Section 592.

As stated in *Newton v. State,* 280 Md. 260, 267, 373 A.2d 262 (1977), quoting from *Gavieres v. United States,* 220 U.S.

---

2. On Count Five appellant received a sentence of three years and a fine of $5,000.00. On Count Thirteen he received a concurrent term of imprisonment (three years) but no fine. In addition, as part of the total sentence in the case, the appellant was required to "make restitution to the State of Maryland [of] the sum of Sixteen thousand five hundred dollars representing the bribes you have been found to have received in this case, and the three thousand dollars representing the sum that you have been found to have extorted". It seems likely that, although Count Thirteen is the only extortion count of which appellant was found guilty, the judge was actually referring to Count Eleven in requiring restitution of $3,000.00, for it was that count that charged appellant with, on or about May 23, 1973, "demand[ing] and receiv[ing] a bribe ... in the approximate amount of three thousand dollars ($3,000.00)".

We note that neither the bribery statute nor the extortion statute under which the appellant was charged provide for restitution as part of the penalty for their violation. The appellant, however, does not challenge here the legality of that part of his sentence. But see Md. Rule 774.

338, 31 S. Ct. 421 (1911), " '[a] single transaction may be an offense against two statutes if each statute requires proof of a fact which the other does not' ". Here, each offense has at least one distinct element not present in the other. Count Five requires proof that the criminal actor be an officer or employee of the State or of a political subdivision; Count Thirteen has no such requirement. Count Thirteen requires proof of a threat; Count Five does not. Count Thirteen requires proof that the threat be for the purpose of obtaining "money, goods or chattels or any other valuable thing" and does not require proof, as does Count Five, that the money sought is "for the purpose of influencing [a public official] in the performance of his official duties".

The two offenses charged are not the same and we see no inconsistency in a finding of guilt as to each, even though the proscribed conduct arose from the same transaction. The fact that a public official may demand money to influence the performance of his official duties, and thus be guilty of bribery, does not mean that he may not also be guilty of violating the separate crime provided in Article 27, Section 562 (extortion), if the demand for money is accompanied by a threat that unless it is paid he will "do ... injury to the person or property" of the party upon whom the demand is made.

It should be noted that conviction of neither Count Five nor Count Thirteen required proof of payment to the appellant. It follows that, contrary to appellant's assertion, there was no "finding of voluntary payment implicit in the conviction of Bribery [Count Five]". The claim of inconsistency, therefore, rests on a false premise and is without merit. The cases from other jurisdictions, *People v. Dioguardi,* 8 N.Y.2d 260, 203 N.Y.S.2d 870, 168 N.E.2d 683 (1960), and *Commonwealth v. Francis,* 201 Pa. Super. 313, 191 A.2d 884 (1963), cited by the appellant to the effect that under certain circumstances and under certain statutes bribery and extortion are mutually exclusive crimes do not persuade us otherwise.

*Judgments affirmed.*
*Costs to be paid by appellant.*