494 A.2d 247

### In re GEORGE G.

No. 1317, Sept. Term, 1984.

Court of Special Appeals of Maryland.

July 3, 1985.

---

**72**

Julia Doyle Bernhardt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., and Cornelia Bright, Asst. State's Atty. for Baltimore City, Baltimore, on brief), for appellee.

Submitted before BISHOP, ALPERT and BLOOM, JJ.

ALPERT, Judge.

The issues presented by this appeal are: (1) whether the trial judge should have recused himself after presiding at the trials of appellant's co-defendants; and (2) whether the court lacked the authority to mandate the terms of appellant's confinement to the Maryland Training School for Boys.

Appellant, a juvenile, brings this appeal from a judgment of the Circuit Court for Baltimore City. Appellant was found delinquent by that court in connection with the rape of a young girl in appellant's apartment building. Appellant allegedly engaged in the rape accompanied by six other males, five of whom engaged in sexual relations with the victim. During the course of appellant's trial, appellant did not deny the incident but asserted that the young lady in question consented to the activity.

Appellant was tried in late May, 1984, by the same judge who, just three weeks earlier, heard the withdrawn admissions and subsequent bench trials of three of appellant's six co-respondents. The judge found these respondents delinquent. At trial appellant's counsel, pointing to the trial judge's prior adjudication of the co-defendants, requested that the judge recuse himself with respect to appellant's bench trial. This request was refused.

■ On appeal, appellant contests the propriety of this refusal. He argues that this case is analogous to one where a judge hears prior damaging facts made in connection with a guilty plea and then when the plea is withdrawn the same judge attempts to hear the defendant's trial on the merits. We observe that under Maryland Rule 4–243(c)(5) this is not permitted. If a guilty plea is withdrawn, the same judge may not hear the subsequent trials if requested to recuse himself. *See Brent v. State,* 63 Md.App. 197, 492 A.2d 637 (1985).

Appellant also relies upon our decision in *Mason v. State,* 12 Md.App. 655, 280 A.2d 753 *cert. denied,* 263 Md. 717 (1971), which alludes to a distinction between a court and jury trial. In *Mason,* the defendant, although tried by a jury, argued that the trial judge who had earlier heard the *nolo contendere* plea of a co-defendant and presided at the trial of another co-defendant ought to recuse himself from the defendant's trial. In disagreeing, we noted that the prior adjudications "were beside the point, *since [the trial judge] was not acting as a fact finder upon the appellant's case* but was simply presiding over the presentation of that case to a jury." *Id.* at 683 (emphasis added). *See also Silbert v. State,* 12 Md.App. 516, 537–38, 280 A.2d 55 *cert. denied,* 263 Md. 720 (1971). There we decided that a motion to disqualify the trial judge was properly denied where, in earlier cases, although ruling on questions of law and the admissibility of evidence, "[t]he judge had made no ruling ... involving the substantive question of guilt or innocence." *Id.* at 537. Holding that a judge who was to

preside over a jury trial need not recuse himself merely because he presided over an earlier trial which ended in a hung jury in *McFadden v. State,* 42 Md.App. 720, 402 A.2d 1310 (1979), we reasoned that "[h]e was not the fact finder and was not, therefore, in a position to be influenced by any testimony which he had heard on an earlier occasion." *Id.* at 729, 402 A.2d 1310.

At first blush, our decision in *Carey v. State,* 43 Md.App. 246, 405 A.2d 293, *cert. denied,* 286 Md. 744 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 244 (1980) appears to be dispositive of the issue in the case *sub judice.* We held in *Carey* that a judge hearing a bench trial need not recuse himself "merely because he had found appellant's co-defendants guilty in a prior non-jury trial." *Id.* 43 Md.App. at 249, 405 A.2d 293. While we rejected a *per se* rule requiring recusal, we observed that a judge may be required to recuse himself where he was prejudiced toward or biased against a defendant. Our holding in *Carey* appears to be in accord with many jurisdictions which have addressed this issue. *See United States v. Partin,* 601 F.2d 1000, 1011 (9th Cir.1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980); *United States v. Partin,* 552 F.2d 621, 636–39 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Mathis,* 550 F.2d 180, 182 (4th Cir.1976) ("The fact that the district judge presided over the trial of a codefendant is no ground for his disqualification, especially where no affidavit of bias or prejudice was filed."), *cert. denied,* 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977); *United States v. DiLorenzo,* 429 F.2d 216 (2nd Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); *In Re Richard W.,* 91 Cal.App.3d 960, 968, 155 Cal.Rptr. 11 (1979) ("A judge is not disqualified to try a case merely because he previously, in a separate proceeding, heard a case of a co-participant or passed on the application of a co-defendant for probation"; an affirmative showing of prejudice is required); *Jones v. State,* 416 N.E.2d 880 (Ind.App.1981).

*Contra People v. Zappacosta,* 77 A.D.2d 928, 431 N.Y.S.2d 96 (1980).

■ In *Carey* we recognized the "assumed proposition that 'judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence.' " *Id.* 43 Md.App. at 249, 405 A.2d 293 (quoting *State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970)). We believe, however, that "there nonetheless do exist those times when, to protect the defendant's and the public's right to a fair trial, and to ensure that the trial judge's impartiality cannot reasonably be questioned, the judge must remove himself from sitting as the trier of fact in the defendant's criminal trial." *Brent,* 63 Md.App. at 205–206, 492 A.2d 637. Maryland Rule 4–243(c)(5) seems to be a recognition by the Court of Appeals that such times do exist. *Id.* at 205, 492 A.2d 637.

This reasoning is fortified by *Mason, Silbert* and *McFadden,* where we perceive a subtle recognition that there may be times when a judge, as a fact finder, may unwittingly be influenced by some previous exposure to the facts of the case. We believe that may have occurred in the instant case. In fairness to the appellant and the trial judge, we set out in full the colloquy that ensued concerning the recusal motion.

MR. MURPHY: Judge, thank you, sir. I have other motions. I am making a motion for you to disqualify yourself in this case.

THE COURT: Okay. Do you want to be heard on that?

MR. MURPHY: Yes, sir. The reason is, with all due respect for this court, and I have a great deal of respect for this court, you have already heard the case involving two other co-defendants.

THE COURT: Two others?

MR. MURPHY: Yes, sir. They were tried approximately 3 weeks ago. The issue in this case is an issue of consent. Now, this court has heard the testimony from the victim in the case. He has heard the other two

cases, and this court has decided that, in fact, this was not a consensual situation.

THE COURT: As to those, what was it 2 cases or 3 cases?

MR. MURPHY: 2, sir. 2 defendants.

THE COURT: As to those 2 cases, the court decided it was not a consensual situation?

MR MURPHY: Yes, sir. Now, in order to make that decision, you already had to make a decision on the credibility of the State's witnesses in this case.

THE COURT: Uh-huh.

MR. MURPHY: So, that you have made that decision before I have even had occasion to be a party to that other case, to hear her testimony or cross examine her. You have already made a decision in another case to believe her, which is fine, but it puts my defendant at a disadvantage. He wasn't here at the other case. He didn't get a chance to cross examine her at that time, and, in fact, Your Honor, in order for him to prevail at this time, you have to believe that this woman is not credible, and you have already ruled in another case that she was credible. So, it puts the court in a very difficult position.

THE COURT: Do you think so?

MR. MURPHY: Yes, sir.

.     .     .     .     .

MR. MURPHY: Let me say this, Judge. I honestly believe that this is crucial, this is not an alibi defense. This is a defense that goes right to the heart of what you have already ruled on. You have already ruled, essentially, that that man is guilty by ruling that it was a non-consensual situation. This man sits before you guilty today based on your ruling, because you have already ruled that this was a non-consensual situation. He doesn't sit before you innocent; that is his whole defense and you have already ruled in a case to which he was not a party that you believe the young lady, and that the young lady had been raped in a non-consensual

situation. You have ruled that way, Your Honor, because you could not have ruled that way and found the other boys delinquent.

THE COURT: I understand what you are saying.

MR. MURPHY: And that is the only defense in this case, Judge.

THE COURT: I understand.

MR. MURPHY: There are other masters down the hall, and I say this with respect, due respect to the court, if we were here the first time—

THE COURT: I understand your position perfectly. I just disagree with you.

MR. MURPHY: How can I convince you otherwise, Judge?

THE COURT: I don't think you can.

MR. MURPHY: During the course of this trial, Your Honor, you are going to have to, in order for the defendant to prevail, you are going to have to reverse yourself in the prior decisions.

THE COURT: Doesn't make any difference; doesn't make a bit of difference. I mean, that is not difficult for me to do or any judge to do. As far as I am concerned, he tries the case as he sees it. *You might be able to prove that he is innocent.*

MR. MURPHY: Well, I don't have to do that.

THE COURT: I don't have the slightest idea—

MR. MURPHY: I don't have to prove anything. The State has to prove that he is guilty, and you have already ruled that they have not failed.

THE COURT: In that case; not in this case. We haven't tried this case before. I think I am able to look at it with a complete objectivity, complete objectivity. I think I am able to weight the credibility of whatever the State's witnesses have to be, whoever they are, and whatever other witnesses are, because I think I can weight them with complete impartiality. There is no question in my mind that it can be done.

MR. MURPHY: Let me say this to you, Your Honor. If in the previous case, okay, you had ruled that it was a non-consensual situation—

THE COURT: No. What I ruled is that A and B, whoever they were—

MR. MURPHY: Were delinquent.

THE COURT: Were delinquent because they were involved in a non-consensual sexual act. That is what I ruled.

MR. MURPHY: So, in that ruling is the fact that you believed the sexual act was non-consensual.

THE COURT: According to what has been presented to me, that is true.

MR. MURPHY: Suppose you had found them not delinquent and dismissed the case because you found that the sexual act was consensual.

THE COURT: Okay.

MR. MURPHY: I would be before Your Honor saying today, Your Honor, that the issue has already been decided. I would be saying—

THE COURT: And I wouldn't be listening.

MR. MURPHY: I would be saying that it is res judicata.

THE COURT: I would try the case. I may find something different. I can understand your position, and if I were in your place, I would make the same argument.

MR. MURPHY: I will give it one more shot, and then I will keep quiet. This is my last shot, Your Honor.

THE COURT: Take your time.

MR. MURPHY: All right, Your Honor. Even though you feel and believe that you can try this case solely on its merits, and I am not making a judgment one way or the other with regard to that, I feel that this court, in order to avoid the appearance of impropriety, which is very important to the citizens of this community that they feel that they are getting a fair shake, I feel that it would be right for this court to disqualify itself and let us just have another trier of fact. We are not asking that the case be dismissed. We are not asking for

anything except a trier of fact who has a clean slate, who has never heard this case. I am not asking for a lot, Judge. All I want is a trier of fact who has not heard this case, so I feel that I am getting a fair shake and so that the victims and the family of the young respondent and the citizens who hear about this case, Your Honor, will feel that he at least had a fair shake before a trier of fact, who had made no prior ruling and hadn't heard anything. I don't think that is asking for a lot, Judge.

THE COURT: I understand.

.    .    .    .    .

THE COURT: The problem—I see what your argument, Mr. Murphy is, that it is perfectly logical, and I have seen it happen many a time when consent can be granted for A and B, but not for C and D. Happens plenty of times. That is not unusual.

MR. MURPHY: Your Honor, in this situation, where it is alleged to be a gang rape, it certainly would be the most unusual thing I ever heard of that she is selective as to one and not as to the other. Judge, in all fairness, Judge, I don't think I am asking for a lot.

THE COURT: I don't think so either.

MR. MURPHY: All I want is a fair shake, Judge, and I am not saying you can't give me one, but what I am saying is, give me a fair chance to win this case, please, sir. That is all I am asking.

THE COURT: I understand what your position is, but I deny your motion. Okay.

(emphasis added).

■ It is elementary that in a criminal case the state has the burden of proving, beyond a reasonable doubt, the guilt of the accused and that the accused need not prove his innocence. As stated by the Court of Appeals in *Johnson v. State*, 227 Md. 159, 163, 175 A.2d 580 (1961), "[e]very one accused of crime is presumed to be innocent; and in order to justify a finding of guilt, it is incumbent upon the State affirmatively to establish the defendant's guilt beyond a

reasonable doubt." *See* R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 45.11 (1983). That axiom was extended by the Supreme Court to juvenile proceedings in *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

We have not the slightest doubt that the able and experienced trial judge was completely familiar with those principles above recited. Subconsciously, however, there apparently lingered on in the deep recesses of his mind the previous finding of the lack of consent on the part of the victim. Three weeks before trial of this case, in the trial of three co-defendants, the trial judge opined in relevant part:

> In this case it's pretty clear that the victim found herself in an elevator with six boys around 14, 15, 16, 17, 18 and 19 years old, young people, there is no dispute about that. Then they went to the tenth floor, there is no dispute about that, about the *fact that six of the boys had intercourse with her,* two of them had intercourse with her twice, was it three of them who had intercourse with her twice, it doesn't make any difference.

> [W.] did not participate in having intercourse, but he was on the scene and on the elevator and in the room. His participation is a little flimsy, but in my mind and in the over-powering influence of six boys in a vacant apartment with one small girl is enough to reenforce (sic) the element that there was a first degree rape. There was a little element that slipped out in the case from one of the young fellows when he said that the child was in a full Nelson and I find that is something to consider. *You don't have to beat a woman over the head to make her have intercourse with you against her will or against her consent. It is rape. And the proposition that she had just come home from a picnic and thought of having intercourse with six boys, I don't believe that is true.*

(emphasis added).

■ We do not question the sincerity or the integrity of the learned trial judge. We believe, however, that when the

trial judge said "You might be able to prove he is innocent," that which had been subconscious came to the surface and caused an irreparable taint on the proceedings. It is that manifestation of the subconscious that projects the *appearance* of bias.

■ Accordingly, we believe the trial judge erred when he refused to recuse himself. *See People v. Zappacosta,* 77 A.D.2d 928, 431 N.Y.S.2d 96, 98 (1980).

Next, appellant contends that the court was without authority (1) to sentence him to a "court controlled commitment" to the Maryland Training School for Boys and (2) to specify that he was not to be given leave of any kind for a period of six months. Notwithstanding our finding of error, we address this contention because it may surface upon retrial.

The authority of a juvenile court to make a disposition after a child has been adjudicated delinquent can be found in Md.Cts. & Jud.Proc.Art. Ann. § 3–820 (1984 Supp.) Subsection (c) provides that a court may:

(1) Place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate;

(2) Commit the child to the custody or under the guardianship of the Juvenile Services Administration, a local department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency; or

(3) Order the child, parents, guardian, or custodian of the child to participate in rehabilitative services that are in the best interest of the child and the family.

We have found no similar case where a court ordered a "court controlled commitment" to the Maryland Training School for Boys. There have, however, been cases where courts attempted to set the terms of commitments to institutions under its authority in § 3–820(c)(2). *See In Re*

*Appeal No. 653, Term 1975,* 277 Md. 212, 352 A.2d 845 (1976); *Md. State Dept. of Health and Mental Hygiene v. Prince George's County Department of Social Services,* 47 Md.App. 436, 423 A.2d 589 (1980), *cert. denied,* 290 Md. 714 (1981).

In *In Re Appeal No. 653,* the Court of Appeals addressed a juvenile court's authority to order that delinquent children in need of assistance committed to the custody of the Department of Health and Mental Hygiene be placed in psychiatric residential treatment facilities separate from adult patients. The court noting that § 3–820(b)[1] gave authority over disposition held that § 3–820(b)(2) "does not contain the authorization for the court to specify whatever terms it deems appropriate." 277 Md. at 217, 352 A.2d 845.

This court, in *Maryland State Dep't of Health and Mental Hygeiene (DHMH) v. Prince George's County,* held that the juvenile court was without the right to direct DHMH to pay for a juvenile's care in a private facility. Relying upon *In Re Appeal No. 653,* we observed that "[s]ection 3–820(c)(2) empowers the court to commit a child . . .; it does not confer upon the court any right to mandate the specific terms of the commitment." 47 Md.App. at 445, 423 A.2d 589.

■ In the case *sub judice* confinement was ordered under the authority of § 3–820(c). Accordingly, here, as in *Dep't of Health and Mental Hygiene,* the court was without authority to mandate the terms of appellant's commitment.

JUDGMENT REVERSED; CASE REMANDED FOR A NEW TRIAL; MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.

---

**1.** Subsection (c) was previously part of subsection (b). Ch. 844, Acts of 1982, effective January 1, 1983, redesignated the second sentence of subsection (b) as (c).