Dear Judge Wilner:
On behalf of the Correctional Services Article Review Committee of the Commission to Revise the Annotated Code, you have requested our opinion concerning Article 27, § 122A of the Maryland Code. This section contains a number of criminal offenses related to the delivery or receipt of certain contraband within a "correctional facility." The term "correctional facility" is defined in § 122A(a)(4) to include not only prisons and jails but also "any . . . other place of legal confinement in this State."
You state that the Committee intends to revise and restate existing correctional services law without making any substantive changes. Accordingly, you ask about the meaning and scope of the phrase "other place of confinement in this State." Specifically, the question is whether this phrase is broad enough to include (i) hospitals where individuals are committed after a finding that they are not criminally responsible or (ii) facilities where juveniles are confined.
Our opinion is as follows: Despite its seeming breadth, the phrase "other place of confinement" does not expand the scope of the defined term "correctional facility" beyond places established for the purpose of confining prisoners charged with or convicted of a crime. Article 27, § 122A does not apply to hospitals and juvenile facilities.
 I Analysis of "Correctional Facility" Definition
A. Introduction
The starting point of statutory construction is the language of the statute. Absent evidence to the contrary, the words of a statute are assumed to have their natural, ordinary, and generally understood meaning. See, e.g., Brodsky v. Brodsky, 319 Md. 92,98, 570 A.2d 1235 (1990). The meaning of the plainest language, however, is "controlled by the context in which it appears."Kaczorowski v. City of Baltimore, 309 Md. 505, 514, 525 A.2d 628
(1987). The Court went on:
 When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.
309 Md. at 514-15.
B. Statutory Text
Article 27, § 122A(a) contains a set of definitions. The pertinent one is this: "`Correctional facility' means any prison, jail, pre-release center, half-way house, or other place of legalconfinement in this State." § 122A(a)(4) (emphasis added).
The criminal offenses relating to contraband are set out in § 122A(b) and (c):
 (b) Any person who commits any of the following offenses is guilty of a felony . . .
 (1) Delivery of any contraband to effect an escape or a weapon to any prisoner or inmate detained or confined in a correctional facility;
 (2) Possession with intent to deliver to any prisoner or inmate detained or confined in a correctional facility, of any contraband to effect an escape or a weapon;
 (3) Depositing or concealing, in or about a correctional facility, or on any land appurtenant to the facility, any contraband to effect an escape; or
 (4) Receipt of any contraband to effect an escape or a weapon.
 (c) Any person who commits any of the following offenses is guilty of a misdemeanor . . .
 (1) Delivery of any alcoholic beverage, any controlled dangerous substance, or other contraband not specifically designated in subsection (b) of this section to any prisoner or inmate detained or confined in a correctional facility; or
 (2) Possession, with intent to deliver to any prisoner or inmate detained or confined in a correctional facility, of any alcoholic beverage, any controlled dangerous substance, or any other contraband not specifically designated in subsection (b).
The phrase "or other place of legal confinement in this State" in the definition of "correctional facility" initially appears broad enough to include a hospital or juvenile facility where an individual is legally confined. The historical context of the phrase, however, leads us to conclude that this definition is limited to penal institutions and jails only and does not include hospitals or juvenile facilities.
C. Legislative History 1. 1961 Enactment
The original enactment of § 122A, Chapter 330 (Senate Bill 335) of the Laws of Maryland 1961, had the following title:
 AN ACT to add new Section 122A to Article 27 of the Annotated Code of Maryland (1957 Edition), title "Crimes and Punishments", to follow immediately after Section 122 thereof and to be under the new sub-title "Contraband, — Drugs and Liquors in Prisons", making it a misdemeanor to illicitly convey to or from penal institutions any means of escape, intoxicating beverages, stimulating sedatives, narcotic or dangerous drugs, and providing penalties therefor.
(Emphasis added.) The new section established a misdemeanor offense for one who "delivers or procures to be delivered, or has in his possession with intent to deliver, [contraband] to a person legally detained and confined in any penal institution,reformatory or other place of confinement within the State. . . ." (Emphasis added.) None of these terms was defined.
The likely legislative understanding of the term "penal institution" is suggested, however, by nearly contemporaneous legislation. The year after the enactment of § 122A, the General Assembly extensively revised the law on what was then the Department of Correction. See Chapter 123 of the Laws of Maryland 1962. This law contained several references to "penal institutions," meaning those institutions under the jurisdiction of the Department of Correction. See Article 27, §§ 670, 672(e) (repealed), 673(b), 679, and 682(a). Then, as now, juvenile facilities and hospitals were not under the jurisdiction of the Division (formerly Department) of Correction. Rather, the training schools and forestry camps for delinquent children were under the jurisdiction of the former State Department of Public Welfare. See former Article 88, §§ 33 through 39A. See alsoMaryland Manual 1961-62 at 79-83.[1] State mental hospitals, including the maximum security facility at the Clifton T. Perkins State Hospital, were under the jurisdiction of the former Department of Mental Hygiene. See former Article 59, §§ 19 and 19B(a). See also Maryland Manual 1961-62 at 74-77.
Unless a statute expressly includes a hospital or juvenile facility, these facilities are not ordinarily considered "penal institutions." See Doe v. Gaughan, 808 F.2d 871, 878-80 (1st Cir. 1986) (state mental hospital not a "penal institution"); Appeal ofBailey, 262 A.2d 177, 179-81 (Conn. 1969) (reformatory for boys under 21 years of age not a "penal institution"); Prince v. State,360 So.2d 1161, 1163 (Fla.App. 1978) (juvenile detention facility not a "penal institution"). The distinction between a juvenile facility and a "penal institution" is highlighted by § 3-823(a) of the Courts Article, which provides that "a child may not be detained at, or committed or transferred to, a penal institution or other facility used primarily for the confinementof adults charged with or convicted of a crime. . . ." [2] The Court of Appeals understood this provision to refer to "jails, detention centers, and correctional institutions housing adults charged with or convicted of crimes." In re Appeal No. 653,277 Md. 212, 218, 352 A.2d 845 (1976).
The term "reformatory," also used in the 1961 enactment of § 122A, surely referred to the two institutions so named at the time, the Maryland State Reformatory for Males in Hagerstown and the Maryland State Reformatory for Women in Jessup. Both of these, like other "penal institutions," were under the jurisdiction of the then Department of Correction.
Finally, the term "other place of confinement" in the 1961 enactment must be construed to refer to places of the same general type as penal institutions and reformatories — namely, local jails and detention facilities, holding those charged with or convicted of a crime. "[T]he established rule of ejusdem generis suggests that where general words in a statute follow the designation of a particular class, the general words are usually construed to apply only to those things of the same class as specifically mentioned. . . ." Culotta v. Raimondi, 251 Md. 384, 387,247 A.2d 519 (1968).
 2. 1986 Amendments
The term "correctional facility," with the definition now found in § 122A(a)(4), was added to the law by Chapter 326 (Senate Bill 353) of the Laws of Maryland 1986. This was departmental legislation, proposed by the Department of Public Safety and Correctional Services. The overall purpose of the bill was to strengthen the existing prohibition by categorizing as felonies some contraband-related offenses that were previously categorized as misdemeanors. See Report of the Senate Judicial Proceedings Committee on Senate Bill 353.
The legislative history is devoid of any suggestion that the bill was intended to apply to facilities that were not previously within the scope of the prohibition. The focus of the General Assembly is suggested by the following passage from the Senate Committee Report: "The problems which are created by weapons, drugs, or alcohol within the institutions create danger for staff, visitors, inmates and the public." (Emphasis added.) Neither the Department of Health and Mental Hygiene nor the then Juvenile Services Administration testified or commented on the bill.
In short, we believe that the General Assembly intended to retain the original scope of § 122A and did not expand it to include either a hospital or a juvenile facility within the definition of "correctional facility" in § 122A(a)(4). Had the General Assembly so intended, models were readily at hand: Article 27, § 139(a) specifically includes hospitals and juvenile facilities, along with correctional facilities, as "places of confinement" for purposes of the offense of escape; and Article 27, § 413(e)(2) specifically includes "any institution for the confinement of juveniles charged with or adjudicated as being delinquent and any hospital . . ." where a person is confined by a criminal court within the definition of "correctional institution," for purposes of the capital murder statute.
 II Conclusion
In summary, it is our opinion that Article 27, § 122A applies to State and local facilities where individuals are lawfully confined because they have been charged or found guilty of a crime, including any local jail or lockup or any place of confinement or prison under the jurisdiction of the Division of Correction, but not to juvenile facilities or hospitals.[3] If this limited scope of the provision is questionable policy, the matter should be brought to the General Assembly's attention.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
 Craig A. Nielsen Assistant Attorney General
[1] Jurisdiction over these facilities was transferred to the former Department of Juvenile Services, now the Department of Juvenile Justice, by Chapter 126 of the Laws of Maryland 1966.
[2] This language was originally enacted in Chapter 554 of the Laws of Maryland 1975.
[3] Section 122A would apply to a hospital that is part of a penal institution. For example, § 122A applies to the Patuxent Institution, which functions in part as a hospital and in part as a prison under the jurisdiction of the Division of Correction.See Eggleston v. State, 209 Md. 504, 513, 121 A.2d 698 (1956). Section 122A would be inapplicable, however, once an inmate is transferred to a hospital outside of the penal system.
 *Page 75