819 A.2d 383

MARYLAND STATE BOARD OF PHARMACY,

v.

Linda Ann SPENCER.

No. 01561, Sept. Term, 2001.

Court of Special Appeals of Maryland.

March 18, 2003.

Paul J. Ballard, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Linda M. Bethman, Staff Attorney, on the brief), Baltimore, for appellant.

Joseph S. Kaufman (Schulman & Kaufman, LLC, on the brief), Baltimore, for appellee.

Argued before SALMON, GREENE, and WILLIAM W. WENNER (Retired, Specially Assigned) JJ.

GREENE, Judge.

Maryland State Board of Pharmacy (Board), appellant, seeks review of the August 31, 2001 Order of the Circuit Court for Baltimore City reversing appellant's earlier decision that Pharmacist Linda Ann Spencer, appellee, practiced pharmacy without a license and failed to keep records of required continuing education credits.

Appellant raises the following questions for our review:

I. Is there substantial evidence in the record to support appellant's decision to discipline Ms. Spencer for practicing pharmacy after her license had expired and for failing to retain documentation of continuing education credits required for license renewal?

II. By renewing appellee's license prior to completing its investigatory and disciplinary process regarding her alleged violations of the Pharmacy Act occurring prior to renewal, did the Board waive its right to discipline her for those violations?

III. In the absence of any showing of actual bias by appellant's members against appellee, did arguments at the hearing between her attorney and two of appellant's members regarding the attorney's statements during the hearing deprive her of due process.[1]

---

1. Appellee raises six questions, essentially rephrasing appellant's questions and raising additional due process concerns. We will address these concerns in our discussion of appellant's third question.

We hold that appellant did not waive its right, as a matter of law, to discipline appellee for violations of the Pharmacy Act by renewing her license during the pendency of its investigation of possible wrongdoing. We also hold that appellant deprived appellee of her right to be treated in a fair and unbiased manner as required by the Administrative Procedure Act and the Maryland Constitution; and, therefore, the case must be remanded in order that appellee may receive a fair hearing of the disputed charges against her. Finally, in light of our answer to the last question, we refrain from addressing whether the record contains substantial evidence to support appellant's decision to discipline appellee.

## FACTS AND PROCEEDINGS

On July 1, 1999, appellee's pharmacist license expired. She continued to practice pharmacy without a license until August 16, 1999. On August 30, 1999, appellee submitted a renewal application to appellant, along with documentation that she had completed the continuing education requirements. On September 14, 1999, appellant issued a renewal license to appellee.

Appellant issued charges against appellee on February 16, 2000, alleging that she had practiced pharmacy without a license for a period of six weeks and that she had failed to maintain records of required continuing education credits. Appellant scheduled a case resolution conference (CRC) to attempt to resolve the matter without the necessity of a hearing. Mr. Stanton Ades and Ms. Laura Schneider, two members of the Board, represented appellant at the CRC. The settlement negotiations were unsuccessful. Both Mr. Ades and Ms. Schneider sat on the panel of Board members who eventually heard this contested case. On many occasions, beginning in July, 2000, appellee sent letters to counsel for appellant, seeking to have the matter referred to the Office of Administrative Hearings (OAH). Appellee believed appellant incapable of giving her a fair and impartial hearing because appellant had been intimately involved in settlement negotiations with appellee and may have prejudged the case. Appel-

lant repeatedly denied appellee's requests to move the case to OAH, stating that appellant's knowledge of settlement negotiations did not disqualify it from hearing evidence. In further justification for refusing to move the case, appellant stated that appellee "failed to assign any specific facts indicating the Board would not be an impartial arbiter," and also noted that the Board "ha[d] never delegated a matter to the Office of Administrative Hearings."

Finally, on August 14, 2000, appellee filed a motion to refer the case to the Office of Administrative Hearings or, in the alternative, to recuse members of the Board. Appellant denied that motion on September 15, 2000.

Appellant held a hearing on the matter on September 20, 2000, and resumed the hearing on January 8, 2001. Counsel for appellant had given books containing exhibits to the members of the Board on the morning of the hearing. When counsel for appellee arrived for the hearing, he noticed that at least one member of the Board was reviewing evidence before the start of the hearing. Counsel for appellee complained about the member reviewing documents that were not in evidence, and asked that member to recuse himself. This request was denied. He then renewed the motion to move the case to OAH and appellant denied that motion also. Finally, counsel for appellee asked that the two members who were involved in settlement negotiations recuse themselves, and that request was also denied.

Appellee did not dispute that she had practiced pharmacy without a license for a period of six weeks. Her counsel argued, however, that her practice of pharmacy without a license was authorized under Md.Code (1984, 1999 Repl.Vol.), § 10–226(b) of the State Government Article,[2] because she had

---

2. Md.Code (1984, 1999 Repl.Vol.), § 10–226(b) of the State Government Article states:

> If, at least 2 calendar weeks before a license expires, the licensee makes sufficient application for renewal of the license, the license does not expire until: (1) the unit takes final action on the application; and (2) either:

submitted a timely renewal application. Appellee did not present any evidence, other than her testimony, that she had filed a renewal application prior to the expiration of her license on July 1, 1999. Appellant's records did not reveal any application, check, or money order from appellee prior to July 1, 1999. Appellant determined that appellee's testimony on the matter lacked credibility and found that she had not filed a timely renewal application.

During the hearing, counsel for appellee accused members of the Board of prejudging the case, of sleeping during the hearing, and of not paying attention to testimony. After the accusation about sleeping, the hearing deteriorated to the point where several members of the Board engaged in a heated conversation with counsel for appellee involving demands for apologies and chastisements about finger pointing from counsel and members of the Board.[3] Finally, one of the

---

(i) the time for seeking judicial review of the action expires; or

(ii) any judicial stay of the unit's final action expires.

3. The record reflects the following exchange:

Ms. Gill (the prosecutor): All right. Ms. Spencer, you indicated—

Mr. Kaufman (appellee's counsel): Excuse me, Mr. Love, do you mind waking up?

Mr. Love: I am wide awake! And I resent your incrimination [sic] that I'm not!

Mr. Kaufman: Your eyes were closed and I wouldn't have said it if your eyes were open and you were awake!

Mr. Ades: Mr. Kaufman, you are totally out of line here. What is the purpose of this?

Mr. Kaufman: Because it's a very important—

Mr. Love: I demand an apology by the counsel before we proceed.

Mr. Kaufman: I'm not going to apologize! You open your eyes!

Mr. Love: No, I demand an apology!

Mr. Kaufman: You point your finger at somebody else!

Mr. Love: You!

Mr. Kaufman: Do something about it, you bi—! Who do you think you are?

Ms. Schneider: I'm sorry, I can't stay here and listen to this.

Mr. Kaufman: Don't you point your finger at me!

Mr. Ades: Mr. Kaufman, would you like to be excused?

Mr. Kaufman: No, I wouldn't. I would like an apology for pointing his finger at me!

Ms. Furman: I would like him to be excused.

Mr. Kaufman: Apologize for pointing your finger!

Board members asked counsel for appellee to leave the room, but he remained and continued arguing. Eventually, counsel was asked if he would act appropriately, and he said he would, so the hearing continued.

Later, counsel for appellee objected to the entry of a mail log, and argued that it "does not go to [appellee's] credibility." Ms. Hawkins, one of the Board members, stated "sure it does." When counsel then said to the Board, "Ms. Hawkins already said out loud it went to credibility," Ms. Hawkins denied saying it and then added, "I did not [say that], and you're a bold-faced liar." Counsel for appellee objected to being called a liar during the proceeding and attempted to have Ms. Hawkins removed from hearing the case, but that request was denied.

On February 21, 2001, appellant issued its Final Decision and Order, finding that appellee had violated Md.Code (1981, 2000 Repl.Vol.), §§ 12–301, 12–701, 12–707(e), and 12–313(b)(24) of the Health Occupations Article.[4] Appellant

---

Ms. Gill: You pointed your finger at me one inch from my face and I didn't carry on.

Mr. Kaufman: I didn't point my finger at you in anger.

Mr. Ades: Mr. Kaufman!

Mr. Kaufman: Mr. Ades, sit down and behave yourself.

**4.** Section 12–301 of the Health Occupations Article states:

(a)Except as otherwise provided in this title, an individual shall be licensed by the Board before the individual may practice pharmacy in this State.

Section 12–701 states:

Except as otherwise provided in this title, a person may not practice, attempt to practice, or offer to practice pharmacy in this State unless licensed by the Board.

Section 12–707(e)(1) states:

Any person who violates § 12–701 ("Practicing pharmacy without a license") or § 12–703 ("Operating a pharmacy without a permit") of this subtitle is subject to a civil fine of not more than $50,000 to be assessed by the Board.

Section 12–313 (b)(24) states:

Subject to the hearing provisions of § 12–315 of this subtitle, the Board, on the affirmative vote of a majority of its members then serving, may deny a license to any applicant, reprimand any licensee, place any licensee on probation, or suspend or revoke a license if the applicant or licensee:

placed appellee on probation, imposed a fine, and reprimanded her.

Appellee filed a Petition for Judicial Review in the Circuit Court for Baltimore City on March 21, 2001. On August 28, 2001, the court held a hearing on the Petition for Judicial Review and on August 31, 2001, entered its Order, reversing the decision of appellant and vacating appellant's Final Decision and Order. The court's reasons for reversing and vacating appellant's decision are located in the oral opinion of the court. The court stated:

> Let me come to the issue that is of real concern to this Court. It is that the trier of fact, the Board if you will, must maintain an appearance that is fair and just. And that under the circumstances to let all persons know that the hearing before it will be fairly reviewed and interpreted.
>
> * * * *
>
> What is clear [is that] there was unnecessary, inappropriate accusations going on within the hearing. It is true, in review of the case itself, is [sic] that the court needs only to determine whether there was substantial evidence of a, [sic] from the record on the whole to support the decision. But that is really only half of the concern.... [T]he other is whether or not ... there was a violation of due process and the law in which the determination was made. If we go to the latter discussion then on[e] would say how the evidence was determined is effected by how the law is respected during the course of the hearing.
>
> * * * *
>
> This court's interpretation of the record is ... that the Board's actions and reactions individually ... raises serious questions as to whether or not it was effected [sic] in its determination in this case.

In addition, the circuit court judge determined that the record lacked substantial evidence to support appellant's find-

---

Violates any rule or regulation adopted by the Board.

ings and thus reversed the Board. Appellant timely noted this appeal on September 27, 2001.

## DISCUSSION

The final decision of an administrative agency in a contested case is subject to review under the Administrative Procedure Act (APA), Md.Code Ann., State Gov. Art. § 10–222. Section 10–222(h) provides that the reviewing court may:

(1)remand the case for further proceedings;

(2)affirm the final decision; or

(3)reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii)exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

As this Court noted in *Montgomery County Dep't of Health & Human Services v. P.F.*, 137 Md.App. 243, 264–65, 768 A.2d 112 (2001):

Appeals from the [ALJ] to the circuit court, and from the circuit court to the appellate courts, are governed by the same standards of review.... The test for determining whether the ... findings of fact are supported by substantial evidence is whether reasoning minds could reach the same conclusion from the facts relied upon by the [agency].... When an agency's decision is based on an erroneous legal conclusion, however, we will substitute our own judgment for that of the agency.

(Internal citations omitted.)

It is well settled that a reviewing court may not substitute its judgment for that of the administrative agency

or make its own findings of fact when reviewing the decision of an ALJ. *Charlotte Marsheck v. Board of Trustees of the Fire & Police Employees' Ret. System of the City of Baltimore*, 358 Md. 393, 402, 749 A.2d 774 (2000). Where an agency's decision is based on an erroneous conclusion of law, however, this deference does not apply. *Mayor of Ocean City v. Purnell–Jarvis, Ltd.*, 86 Md.App. 390, 402, 586 A.2d 816 (1991)(citing *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home*, 313 Md. 614, 547 A.2d 190 (1988)). In such a case, we "must substitute [our] judgment for that of the agency if our interpretation of the applicable legal principles is different." *Perini Services, Inc. v. Maryland Health Resources Planning Comm'n.*, 67 Md.App. 189, 201, 506 A.2d 1207 (1986)(citing *Ramsay, Scarlett & Co., Inc. v. Comptroller of the Treasury*, 302 Md. 825, 490 A.2d 1296 (1985)). A reviewing court can and should review whether an agency has acted within its statutory powers or has otherwise made an error of law. *Brzowski v. Maryland Home Imp. Comm'n*, 114 Md.App. 615, 691 A.2d 699 (1997), cert. denied, 346 Md. 238, 695 A.2d 1227 (1997).

 As a preliminary matter, we hold that appellant did not waive its right to discipline appellee by renewing her license to practice pharmacy during the pendency of its investigation of her. Appellee places great emphasis on the relationship between section 10–226(b) [5] of the State Government Article and section 12–310(a) of the Health Occupations Article.[6] We interpret the code sections to require the Board to issue a license to a person who meets the stated requirements and that the license does not expire if a timely renewal application has been filed. Those sections do not, however,

---

**5.** See footnote 2.

**6.** Section 12–310(a) states:

License expired for less than 2 years. The Board shall reinstate the license of a pharmacist whose license has been expired for less than 2 years, if the pharmacist: (1) Meets the renewal and reinstatement requirements set by rule and regulation of the Board; and (2)Pays to the Board the reinstatement fee set by the Board.

deprive the Board of the power to sanction appellee if it finds, after a fair hearing, that she did not file a timely renewal application and that, therefore, she practiced pharmacy for a period of time without a license. *See* Md.Code (1981, 2000 Repl.Vol.), §§ 12–701, 12–707(e)(1), and 12–313(b)(24) of the Health Occupations Article.[7] The fact that the Board chose to renew a license upon receipt of an untimely renewal application does not deprive the Board of the authority to sanction for prior violations of the applicable statutes.

██ With regard to appellee's due process concerns, we note that Section 10–201 of the State Government Article states:

The purpose of this subtitle is to:

(1) ensure the right of all persons to be treated in a fair and unbiased manner in their efforts to resolve disputes in administrative proceedings governed by this subtitle; and (2) promote prompt, effective, and efficient government.

In addition, Article 24 of the Maryland Declaration of Rights states:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land.

██ Procedural due process guaranteed to persons in this State by Article 24 requires "that administrative agencies performing adjudicatory or quasi-judicial functions observe the basic principles of fairness as to parties appearing before them." *Maryland State Police v. Zeigler,* 330 Md. 540, 559, 625 A.2d 914 (1993). This doctrine of fairness is " 'specifically applicable' to issues of disqualification, although 'disqualification will not be permitted to destroy the only tribunal with power in the premises.' " *Regan v. Chiropractic Examiners,* 355 Md. 397, 408–09, 735 A.2d 991 (1999)(quoting *Board of*

---

7. See footnote 3.

*Medical Examiners v. Steward,* 203 Md. 574, 582, 102 A.2d 248 (1954)).

As previously mentioned, two of the members of the Board that heard this case also participated in settlement discussions with appellee before the hearing. The record in this case reflects that appellant considered those settlement negotiations and perhaps relied on their knowledge of those negotiations in rendering the Final Decision and Order.[8] In our view it was unnecessary to note in the Final Decision and Order that "[a]lthough Respondent agreed to a proposal at the conference, she later rejected it," unless the Board considered that fact in their deliberations. More significantly, appellant denied appellee's right to be treated in a fair and unbiased manner when a member of the Board displayed blatant hostility toward appellee's counsel during the hearing, causing an appearance of impropriety.[9]

Unfortunately, the actions and statements of some of the members who presided over the hearings held on September 20, 2000, and January 8, 2001, lead this Court to conclude that appellee was denied a fair and unbiased resolution of her dispute with appellant, in violation of section 10–201 of the State Government Article and Article 24 of the Maryland Declaration of Rights.

---

8. The first page of the Final Decision and Order includes this statement:
 On May 18, 2000, a case resolution conference was held. In attendance were Stanton Ades, P.D., Board President, Laura Schneider, Board member, LaVerne Naesea, Executive Director for the Board, Paul Ballard, Assistant Attorney General and Board Counsel, Roberta Gill, Assistant Attorney General and Administrative Prosecutor on behalf of the State, Joseph S. Kaufman, Esquire, Counsel for Respondent, and the Respondent. Although the Respondent agreed to a proposal at the conference, she later rejected it.
 The Board should not have taken into consideration any aspect of the settlement negotiations in its deliberations and final decision of this contested case.

9. The consideration by the Board of evidence prior to the start of the hearing is also disturbing and lends itself to a conclusion that the actions of the Board created an appearance of impropriety.

Because the decision of appellant was unconstitutional and resulted from an unlawful procedure, this Court will affirm, in part; vacate, in part; and remand the case for further proceedings.[10] Md.Code (1984, 1999 Repl.Vol.), §§ 10–222(h)(3)(i) and 10–222(h)(3)(iii).

There are no definitions in the Administrative Procedure Act for the relevant terms (fair, unbiased, unlawful procedure) found in sections 10–201 and 10–222(h). *See* Md.Code (1984, 1999 Repl.Vol.), § 10–202 of the State Government Article. Appropriate analogies can be drawn, however, from the Maryland Rules and case law. *See Regan v. Chiropractic Examiners,* 355 Md. 397 at 410, 735 A.2d 991 (1999) (noting in a case involving the Maryland Board of Chiropractic Examiners that "the 'appearance of impropriety' standard set forth in our cases involving judges and some others is applicable generally to the participation of members of Maryland administrative agencies performing quasi-judicial or adjudicatory functions").

Md. Rule 16–813, Canon 3(C), provides in pertinent part:
RECUSAL. (1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

■ Courts have recognized that there is a strong presumption that judges are impartial and will refrain from presiding over a matter when appropriate. *Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737 (1993); *Boyd v. State,* 321 Md. 69, 74, 80, 581 A.2d 1 (1990); *Doering v. Fader,* 316 Md. 351, 360, 558 A.2d 733 (1989); *Reed v. Baltimore Life Ins. Co.,*

---

**10.** Insofar as the circuit court reversed appellant's decision because of due process concerns, we affirm. However, with regard to the circuit court's determination that the record lacked substantial evidence to support appellant's substantive conclusions, we vacate. That decision should not be made until appellee has been afforded a fair hearing. Once appellee is granted a fair hearing before an unbiased tribunal, the evidence presented at that time may or may not support appellant's substantive position.

127 Md.App. 536, 553, 556, 733 A.2d 1106 (1999). This presumption can be overcome, however, if the aggrieved party proves the existence of actual bias. *Jefferson–El,* 330 Md. at 107, 622 A.2d 737. In other words, the party requesting recusal must show that the trial judge has a personal bias concerning the motioning party, or personal knowledge of disputed evidentiary facts concerning the proceeding. *Id.*

■■ In addition, the presumption of impartiality of judges can be overcome if the motioning party can show the existence of an appearance of impropriety. *Boyd,* 321 Md. at 85–86, 581 A.2d 1. The Court of Appeals has recognized that it is essential that the judicial process not only operate fairly and but also appear to operate fairly. *Id. See also Jefferson–El,* 330 Md. at 107, 622 A.2d 737. Consequently, courts have determined that recusal is mandated when a trial judge reasonably appears to hold a bias or prejudice against the moving party. *Boyd,* 321 Md. at 85–86, 581 A.2d 1; *see also Jefferson–El,* 330 Md. at 107, 622 A.2d 737; *Reed,* 127 Md.App. at 554, 733 A.2d 1106; *Goldberger,* 96 Md.App. at 321, 624 A.2d 1328.

> [T]he test to be applied is an objective one which assumes that a reasonable person knows and understands all the relevant facts.... Like all legal issues, judges determine appearance of impropriety—not by what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.

*Boyd,* 321 Md. at 86, 581 A.2d 1 (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1313 (2nd Cir.1988)); *see also Surratt v. Prince George's County,* 320 Md. 439, 465, 578 A.2d 745 (1990) (stating the standard as "whether a reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned").

■■ As previously stated, two of the Board members hearing the case had personal knowledge of disputed eviden-

tiary facts concerning the proceeding because they had intimately participated in settlement negotiations with appellee. In and of itself, the participation by a Board member in both the settlement negotiations and the following hearing, does not pose a problem. *See Regan,* 355 Md. at 412, 735 A.2d 991 (noting that "administrative decision makers do not automatically become biased merely because they have become familiar with the facts of a proceeding through the performance of their administrative duties"). The record in this case, however, reflects that appellant considered those settlement negotiations in rendering its Final Decision and Order. In addition, the fact that the tribunal was reviewing documents provided by one party, prior to their introduction as evidence during the hearing, disturbs this Court. The consideration of settlement negotiations and the review of documents not in evidence both contributed to the appearance of impropriety in this case. More disturbing than either of these problems, however, is the behavior of Ms. Hawkins during the hearing.

It does appear to this Court that counsel for appellee crossed the line from zealous advocacy to inappropriate and uncivil behavior at times during the course of the hearing.[11] At the point of the conversation with Ms. Hawkins, however,

---

11. Courts in this State have guidelines for appropriate courtroom conduct. "Courtesy is always appropriate. Nastiness and rudeness do not impress juries or judges." Dennis M. Sweeney, Guidelines for Lawyer Courtroom Conduct, September/October 1998 Maryland State Bar Association Journal. In addition, as noted by the Maryland State Bar Association Code of Civility, adopted by the Bar Association of Baltimore City;
> ... A lawyer should treat all persons with courtesy and respect, and at all times abstain from rude, disruptive, and disrespectful behavior ... A lawyer should speak and write civilly in all communications with the court ... A lawyer should avoid displays of temper toward the court.

Guidelines on Civility, adopted by the Bar Association of Baltimore City, May 14, 1996; *See also,* Maryland State Bar Association, Code of Civility, (noting that lawyers "will abstain from disparaging personal remarks or acrimony toward any participants in the legal process ... will speak and write civilly and respectfully to the Court ... will not engage in conduct that offends the dignity and decorum of judicial and administrative proceedings ... ").

counsel was engaged in appropriate advocacy and cannot be charged fairly with goading her into calling him a liar. He objected to the admission of a document and noted that it "did not go" to his client's credibility. In response, Ms. Hawkins said, "sure it does," indicating that she believed it was relevant to credibility. Counsel later noted in argument that Ms. Hawkins said the document went to credibility. She then denied saying that and called him a liar.[12] Ms. Hawkins created an unacceptable appearance of impropriety by calling counsel a bold-faced liar during the course of the hearing.[13]

12. While we recognize that the Board sitting in this case was not comprised of judges, they were acting in a quasi-judicial function and are held to basic standards of fairness. *See Regan v. Chiropractic Examiners*, 355 Md. 397 at 410, 735 A.2d 991 (1999)(noting in a case involving the Maryland Board of Chiropractic Examiners that "the 'appearance of impropriety' standard set forth in our cases involving judges and some others is applicable generally to the participation of members of Maryland administrative agencies performing quasi-judicial or adjudicatory functions"); *Maryland State Police v. Zeigler*, 330 Md. 540, 559, 625 A.2d 914 (1993)(noting that "that administrative agencies performing adjudicatory or quasi-judicial functions observe the basic principles of fairness as to parties appearing before them"). The previously cited Guidelines on Civility state:

A judge should not employ hostile, demeaning or humiliating words in opinions or in written or oral communications with lawyers, parties or witnesses ... A judge should treat lawyers and litigants with impartiality and courtesy while maintaining control of proceedings ...

Guidelines on Civility, adopted by the Bar Association of Baltimore City, May 14, 1996. In addition, Canon 2 of the Maryland Code of Judicial Conduct states in pertinent part:

A judge should behave with propriety and should avoid even the appearance of impropriety. A judge should ... act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Md. Rule 16–813, Canon 2(A).

13. It should be noted that the Court of Appeals has stated that courts have been reluctant to find an appearance of impropriety on the basis of a *litigant's* actions. *Regan*, 355 Md. at 414, 735 A.2d 991. The cases the Court used to illustrate this point include cases where courts were unwilling to disqualify judges because a party had refused to support the re-election of the judge; a litigant had written an article criticizing the judge; a litigant sued or threatened to sue a judge; a litigant made intemperate and scurrilous" attacks on a judge. *Id.* This case is not akin to any of those situations.

In the instant case, a reasonable member of the public knowing all the relevant facts would conclude that appellant's impartiality was questionable. The hearing started out poorly when appellee's counsel arrived and "caught" the members of the Board reviewing documents not in evidence before the hearing started. In addition, it was inappropriate for the Board to consider anything it learned during the unsuccessful settlement negotiations, when issuing its Final Opinion and Order. Of much more concern to this Court, however, is the statement by Ms. Hawkins to appellee's counsel. Once the hearing deteriorated to the point where a member of the reviewing tribunal called the attorney for appellee a "bold faced liar," the appearance of impartiality and fairness of the whole proceeding vanished.

## CONCLUSION

In light of the actions by the Board that caused an appearance of impropriety in the proceedings in this case before the Board, this Court holds that the circuit court did not err by finding that appellee was denied due process in that hearing. Consequently, we remand this case to the Circuit Court for Baltimore City with instructions to remand the case to the Board, directing appellant to delegate the authority to conduct the contested case hearing and to issue the final administrative decision in this case to the OAH.[14]

---

In addition, appellant cites to *Carey v. State*, 43 Md.App. 246, 405 A.2d 293 (1979). In *Carey*, the defendant pointed to no particular facts supporting his claim that the record reflected "a certain amount of mutual antipathy between the judge and defense counsel." *Id.* at 251, 405 A.2d 293. This Court in *Carey* held that the circuit court judge in that case did not have to recuse himself and that a "judge may ... cordially dislike and even distrust an attorney and yet be capable of doing exact justice towards his client." *Id.* There is nothing cordial about a member of the Board calling appellee's counsel a "bold-faced liar." *Carey* does not change our analysis of the facts in this case.

14. Section 10–205(a) of the State Government Article gives appellant the authority to conduct the hearing or delegate the authority to conduct the hearing to the OAH, or a person not employed by the OAH. Furthermore, Section 10–205(b)(5) of the State Government Article gives the Board the power to delegate to the OAH the authority to issue

**JUDGMENT AFFIRMED IN PART, AND VACATED IN PART.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND TO THE MARYLAND STATE BOARD OF PHARMACY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**

the final administrative decision of an agency in a contested case. Md.Code (1984, 1999 Repl.Vol.), §§ 10–205(a), 10–205(b) of the State Government Article.

We recognize that "under the APA, the delegation of matters to the OAH is not a mandatory function but a function within the discretion of the administrative agency." In light of the facts of this particular case, however, it would not be appropriate to remand the case to the same tribunal that heard the case originally. The Court of Appeals addressed the purpose for the creation of the OAH and noted:

> One of the main objectives of the legislature in establishing the OAH was to provide an impartial hearing officer in contested cases. A hearing officer employed by and under the control of the agency where the contested case or other disputed action arises, often results in the appearance of an inherent unfairness or bias against the aggrieved.

*Anderson v. Department of Public Safety*, 330 Md. 187, 213, 623 A.2d 198 (1993). In this case, we have held that the actions of the Board members created an appearance of impropriety and unfairness, and for that reason, the case must be retried before a different tribunal.