839 A.2d 743

Sheldon I. LANDSMAN

v.

MARYLAND HOME IMPROVEMENT COMMISSION.

No. 436, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 22, 2003.

242

244

Sheldon I. Landsman, Potomac, for appellant.

Joel Jacobson (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before DAVIS, KRAUSER, and BARBERA, JJ.

BARBERA, J.

We are asked to decide in this case whether the General Assembly's 2000 amendment to the Home Improvement Guaranty Fund, increasing by a third the maximum amount a homeowner can recover for actual loss due to the unsatisfactory work of a contractor, applies retroactively to contracts entered into before the effective date of that amendment. For the reasons that follow, we hold that it does.

## BACKGROUND

The underlying facts are not in dispute. Appellant, Sheldon I. Landsman, entered into a contract for a home improvement project with David Somerville, t/a Somerville Construction, on January 19, 1997. At that time, Somerville possessed a Maryland home improvement contractor's license.

Somerville completed some work on the project, but abandoned it on or about December 5, 1997, when he advised Landsman that he was moving to Arizona. Somerville refused to refund some of the monies that Landsman had paid him under the agreement, representing to Landsman that there was no money available. Somerville's contractor's license had expired on June 30, 1997.

Following enactment of Chapter 144 of the Maryland Session Laws of 2000, the maximum recovery under the Maryland Home Improvement Guaranty Fund ("Fund") was increased from $10,000.00 to $15,000.00. By express provision in the enacting legislation, the effective date was October 1, 2000. Nothing in the legislation indicated whether the statute should be applied retroactively.

On November 10, 2000, Landsman filed a claim against the Fund. The matter came on for a hearing in March 2001, before an administrative law judge ("ALJ"). Landsman represented himself at the hearing. The Fund was represented by counsel. Somerville was not present, and no representative appeared on his behalf.[1]

The ALJ thereafter issued his written proposed decision. The ALJ found as a fact that Landsman had incurred an "actual loss" of $42,395.41, and concluded that Landsman was entitled to recover the statutory maximum of $15,000.00 from the Fund.

In a proposed order, Panel B of the Maryland Home Improvement Commission, ("Commission"), appellee, ap-

---

1. Proper notice was twice sent to Somerville's address of record with the Commission. Both notices were returned, marked "undeliverable."

proved the ALJ's proposed decision but reduced Landsman's award from \$15,000.00 to \$10,000.00. The panel concluded that "the \$15,000.00 claim limit applies to contracts entered into on or after October 1, 2000 and that contracts entered into prior to October 1, 2000 are subject to the \$10,000.00 claim limit." The panel's proposed order further stated that "the contractor's liability to the Guaranty Fund constitutes a penalty, and that an increase in such a penalty may not be applied retroactively to contracts entered into before the amendment to the law took effect."

Landsman filed exceptions to the proposed order. Following an exceptions hearing, the Commission entered a final order on July 24, 2001, affirming the proposed order.

Landsman thereafter filed a petition for judicial review in the Circuit Court for Montgomery County. After a hearing on the merits, the court affirmed the Commission's final order.

In an opinion and order entered on March 22, 2002, the court declared "that the Legislature's intent was clear not to make the amendment to Md. Ann.Code Art. Bus. Reg. § 8–405(e)(1) retroactive." Noting that the effective date "is expressly stated to be October 1, 2000" and that "[t]here is no express statement by the Legislature to the contrary," the court concluded that " § 8–405(e)(1) fits neatly into the general category of statutes, which carry the strong presumption against retroactivity." The Court rejected Landsman's argument that the 2000 amendment was remedial, stating that the increase in the maximum award "clearly creates new rights, new duties and new obligations thus effecting the substantive rights of the Petitioner and Somerville, a licensed contractor." The court reasoned that the 2000 amendment "gives the claimant a new right to seek a higher monetary award from the Fund" and affects Somerville's substantive rights by increasing the "maximum penalty," thereby exposing Somerville to greater risk of license suspension for failure to reimburse the Fund the full amount of a claim.

Following entry of the court's order, Landsman filed this timely appeal raising five issues for our review, which we have consolidated into one:

Did the Commission err in concluding that, as a matter of law, the $15,000.00 claim limit applies only to contracts entered into on or after October 1, 2000, and that contracts entered into prior to October 1, 2000 are subject to the $10,000.00 claim limit?

## DISCUSSION

In 1962, the General Assembly enacted the Maryland Home Improvement Law, now codified at Md.Code (1992, 1998 Repl.Vol., 2003 Supp.), § 8–101 *et seq.* of the Business Regulation Article.[2] This law, which had its genesis in a 1961 report of the Governor's Commission to Study the Home Improvement Industry in Maryland, is a regulatory scheme designed for the protection of the public. *Shade v. State,* 306 Md. 372, 377, 509 A.2d 664 (1986); *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 294, 265 A.2d 759 (1970).

As the title of the original statute explained, the law was enacted, in part, "with the intention of 'providing generally for the regulation of the home improvement business for all persons in the State,' and 'establishing a system of licensing certain contractors and salesmen under a new administrative agency to be known as the Maryland Home Improvement Commission.'" *Fosler v. Panoramic Design, Ltd.,* 376 Md. 118, 126, 829 A.2d 271 (2003). "The Commission's primary functions are to investigate complaints about home improvement contractors, and to administer the licensing of those contractors in this state." *Brzowski v. Maryland Home Improvement Comm'n,* 114 Md.App. 615, 628, 691 A.2d 699, *cert.*

2. Sections 8–405 and 8–409 are found in the 2003 Supplement to the 1998 Replacement Volume of the Business Regulation Article. With the exception of references to those statutes, all statutory references, unless otherwise indicated, are to the 1998 Replacement Volume of the Business Regulation Article.

*denied,* 346 Md. 238, 695 A.2d 1227 (1997) (code citations omitted).

In 1981, the General Assembly enacted Subtitle 4 of the Home Improvement Law, establishing the Fund. The Fund was created to provide a remedy for homeowners who suffer an "actual loss that results from, [*inter alia,*] an act or omission by a licensed contractor." § 8–405(a); *Fosler,* 376 Md. at 131, 829 A.2d 271.[3]

Subtitle 4 sets forth an administrative remedy before the Commission for claims against the Fund, and provides for a contested case hearing before the Commission and payments by the Commission to claimants. *Fosler,* 376 Md. at 131, 829 A.2d 271. As we have said, prior to 2000, the maximum amount that a homeowner could recover from the Fund for actual loss due to the unsatisfactory work of a home improvement contractor was $10,000.00. By Chapter 144 of the Acts of 2000, the General Assembly increased that amount to $15,000.00.[4] As amended, § 8–405(e)(1) reads: "The Commis-

---

3. Subsection 8–405(a) reads in its entirety: "Subject to this subtitle, an owner may recover compensation from the Fund for an actual loss that results from an act or omission by a licensed contractor or a violation of § 8–607(4) of this title as found by the Commission or a court of competent jurisdiction."

   Subsection 8–607(4) provides, in pertinent part: "A person may not ... fail to give the written notice required under § 8–501(c)(2) and (3) of this title." Subsections 8–501(c)(2) and (3), in turn, provide:
   (2) If payment for work performed under the home improvement contract will be secured by an interest in residential real estate, a written notice in not smaller than 10 point bold type that is on the first page of the contract shall state in substantially the following form: "This contract creates a mortgage or lien against your property to secure payment and may cause a loss of your property if you fail to pay the amount agreed upon. You have the right to consult an attorney. You have the right to rescind this contract within 3 business days after the date you sign it by notifying the contractor in writing that you are rescinding the contract."
   (3) The notice under paragraph (2) of this subsection shall be independently initialed by the homeowner.

4. Chapter 144 included several other changes to the Home Improvement Law. The Act extends the termination provisions relating to the statutory and regulatory authority of the Commission, from October 1, 2002, to October 1, 2012. The Act also requires that the Commission

sion may not award from the Fund [ ] more than $15,000 to 1 claimant for acts or omissions of 1 contractor."

At the heart of this appeal is whether Landsman, having established an actual loss resulting from Somerville's abandonment of the job in December 1997, is entitled to benefit from the increased maximum amount provided under the 2000 amendment. The answer to this question is dictated by whether the amendment is to be applied retrospectively or prospectively.[5]

As we undertake to answer that question, we note preliminarily that "[i]t is well settled that a reviewing court may not substitute its judgment for that of the administrative agency or make its own findings of fact when reviewing the decision of an ALJ." *Maryland State Bd. of Pharm. v. Spencer*, 150 Md.App. 138, 147–48, 819 A.2d 383, *cert. granted*, 376 Md. 49, 827 A.2d 112 (2003); *accord Marzullo v. Kahl*, 366 Md. 158, 172, 783 A.2d 169 (2001). Although "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," *Marzullo*, 366 Md. at 172, 783 A.2d 169, an agency's decision "is owed no deference ... when it is based on erroneous legal conclusions," *Handley v. Ocean Downs, LLC*, 151 Md.App. 615, 642, 827 A.2d 961 (2003). Therefore, "we 'must substitute [our] judgment for that of the agency if our interpretation of the applicable legal principles is different.'" *Spencer*, 150 Md.App. at 148, 819 A.2d 383 (quoting *Perini Servs., Inc. v. Maryland Health Res. Planning Comm'n*, 67 Md.App. 189, 201, 506 A.2d 1207, *cert. denied*, 307 Md. 261, 513 A.2d 314 (1986)).

---

and the statutes and regulations related to it be evaluated, and a report be submitted to the Department of Licensing and Regulation on or before July 1, 2011.

5. For purposes of this opinion, the terms "retroactive" and "retrospective" are deemed synonymous. "Both words 'describe acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act.'" *Rawlings v. Rawlings*, 362 Md. 535, 540 n. 2, 766 A.2d 98 (2001) (quoting Norman J. Singer, 2 Statutes and Statutory Construction § 41.01, at 337 (5th ed.1993)).

The question we decide in this case is one of statutory construction, not involving any special expertise of the Commission. Consequently, we owe no deference to the Commission's decision respecting the applicability of the amendment. *Angelini v. Harford County,* 144 Md.App. 369, 373, 798 A.2d 26, *cert. denied,* 370 Md. 269, 805 A.2d 265 (2002). Rather, we examine this purely legal question *de novo.*

"Whether a statute operates retrospectively or only prospectively is in the first instance a question of legislative intent." *Tyrone W. v. Danielle R.,* 129 Md.App. 260, 277, 741 A.2d 553 (1999), *aff'd sub nom. Langston v. Riffe,* 359 Md. 396, 754 A.2d 389 (2000). " 'Because of the potential for interference with substantive rights, however, and because of the resulting prejudice against retroactive application,' a statute that affects substantive rights is presumed to operate prospectively." *Id.* (quoting *State of Maryland Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 123, 360 A.2d 1 (1976)).

When, however, a statute affects only a procedure or remedy, and not a substantive right, the presumption in favor of prospective application does not apply. *Rawlings v. Rawlings,* 362 Md. 535, 556, 766 A.2d 98 (2001); *Langston,* 359 Md. at 408, 754 A.2d 389. Indeed, "[a]bsent a contrary intent made manifest by the enacting authority, any change made by statute or court rule affecting a remedy only (and consequently not impinging on substantive rights) controls all court actions whether accrued, pending or future." *Aviles v. Eshelman Elec. Corp.,* 281 Md. 529, 533, 379 A.2d 1227 (1977); *accord State Admin. Bd. of Election Laws v. Supervisory Bd. of Elections of Baltimore City,* 342 Md. 586, 601, 679 A.2d 96 (1996); *Grandison v. State,* 341 Md. 175, 257, 670 A.2d 398 (1995), *cert. denied,* 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996). These rules of construction apply equally to amendatory acts. *Tyrone W.,* 129 Md.App. at 278, 741 A.2d 553.

Remedial statutes are " 'those which provide a remedy, or improve or facilitate remedies already existing for

the enforcement of rights and the redress of injuries,' " but do " 'not affect substantive or vested rights.' " *Langston*, 359 Md. at 408–09, 754 A.2d 389 (citation omitted). If, however, the statute provides a new form of relief that itself constitutes a substantive right, it is not purely remedial, and will not be presumed to apply retroactively. *Amecom*, 278 Md. at 125, 360 A.2d 1.

The General Assembly did not expressly declare that its 2000 amendment of § 8–405(e)(1) was to be applied retrospectively. Neither is there anything in the scant legislative history of the amendment that indicates the legislative intent in this regard. We therefore follow the statutory construction principles laid out above to ascertain whether the amendment affects substantive rights or liabilities, in which case the strong presumption of prospectivity applies, or whether the amendment is purely procedural or remedial, in which case there is no presumption of prospectivity and the amendment will be applied retroactively. The Commission adheres to the position it took below, arguing that the 2000 amendment is neither procedural nor remedial in nature, and that it affects the substantive rights of home improvement contractors in this State. Landsman of course takes a contrary position. He does not argue that the amendment is procedural, but does argue that it is purely remedial.

The question whether the 2000 amendment to § 8–405(a)(1) is purely remedial is one that has not been resolved by either this Court or the Court of Appeals. Our decision in *Brzowski*, however, sheds some light on the issue because we had occasion in that case to construe portions of Subtitle 4 of the Home Improvement Law. In the course of doing so, we examined the legislative history of the subtitle.

*Brzowski* involved a contractor's challenge to the Commission's compensation of a claimant through the Fund pursuant to an arbitration award that did not comply with § 8–409(a)(2). That section requires that an arbitration award contain a statement by the arbitrator that he "expressly found on the merits that the claimant is entitled to recover under § 8–

405(a) of this subtitle." *Brzowski,* 114 Md.App. at 621–22, 691 A.2d 699.

■■■ After a thorough examination of the history of the Home Improvement Law, we concluded in *Brzowski* that the law was enacted for the protection of the public, and that the Fund provides "an additional remedy for homeowners who suffered actual loss" due to the actions or omissions of a contractor. *Id.* at 627, 691 A.2d 699.[6] We conclude, here, that the 2000 amendment increasing the maximum award that can be awarded from the Fund is likewise remedial in the sense that it improves a remedy "already existing for the enforcement of rights and the redress of injuries." *Langston,* 359 Md. at 408, 754 A.2d 389.

■■■ Our determination that the amendment is remedial in this sense does not end the inquiry, however, because we must also determine whether retrospective application of the amendment would "interfere with vested or substantive rights." *Id.* at 408, 418, 754 A.2d 389. As we consider this aspect of the issue, we bear in mind that " '[s]tatutes which do not destroy a substantial right, but simply affect procedure or remedies, are not considered as destroying or impairing vested rights, for there is no vested right in any particular mode of procedure for the enforcement or defense of the right.' " *Rawlings,* 362 Md. at 561, 766 A.2d 98 (quoting *Winston v. Winston,* 290 Md. 641, 650, 431 A.2d 1330 (1981)); *accord Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 625–26, 805 A.2d 1061 (2002).

---

**6.** We note that, in *Brzowski,* the Commission took a position that is seemingly at odds with the position it takes in the present appeal. The Commission asked there that we "apply a liberal construction to the Act in light of its remedial purpose," and urged that deference be paid to the Commission's "previous liberal constructions of the statute in which it has sought to achieve the remedial purposes sought by the legislature's enactment of the Statute." *Brzowski v. Maryland Home Improvement Comm'n,* 114 Md.App. 615, 625–26, 691 A.2d 699, *cert. denied,* 346 Md. 238, 695 A.2d 1227 (1997). As we have said, the Commission argues in the case *sub judice* that the amendment is neither procedural nor remedial.

In this case, the Commission interpreted the 2000 amendment to § 8–405(e)(1) to apply only to actions arising out of contracts entered into on or after October 1, 2000, because of the increased "penalty" to the contractor. In affirming that decision, the circuit court found that the 2000 amendment of § 8–405(e)(1) "clearly creates new rights, new duties and new obligations thus effecting the substantive rights" of both Landsman and the contractor. We of course do not review the decision of the circuit court; instead, we review that of the Commission. *Mehrling v. Nationwide Ins. Co.*, 371 Md. 40, 57, 806 A.2d 662 (2002). Regardless, we do not agree with the court that the 2000 amendment created new rights, duties, or obligations of either Landsman or Somerville.

Indeed, insofar as Landsman is concerned, the Commission does not even discuss the extent to which, if at all, the amendment created a new substantive right of Landsman and comparably situated homeowners. In any case, Landsman did not have a vested, legally enforceable right to compensation from the Fund until July 24, 2001, the date on which the Commission determined that he was entitled to compensation. We so conclude by resort to our decision in *McComas v. Criminal Injuries Compensation Bd.*, 88 Md.App. 143, 594 A.2d 583 (1991).

In *McComas*, we addressed the question of whether an amendment to the Criminal Injuries Compensation Act, establishing for the first time a ceiling for the award of benefits under the Act, applied to claims that were pending prior to the effective date of the amendment. We said that rights created by the Criminal Injuries Compensation Act are purely statutory and, unless vested, may be amended or repealed "at the whim of the legislature." *Id.* at 150, 594 A.2d 583; *see also id.* at 149, 594 A.2d 583 (discussing cases). We also said that a crime victim does not have a substantive right to benefits under the Act. Instead, the victim has only an expectation of receiving benefits unless and until the Criminal Injuries Compensation Board determines that statutory requirements for the award of benefits have been met, at which time, but not

before, the right to an award becomes vested. *Id.* at 150, 594 A.2d 583. Observing that amendments to purely statutory rights are not bound by the general rule that statutes are presumed to apply prospectively, *id.,* we said, "[a]bsent a saving provision or some other clear expression by the legislature that it intends to protect claims that are pending on the date of enactment, an amendment of a purely statutory right affects all claims not yet vested," *id.* at 150–51, 594 A.2d 583.

We recognize that in the case *sub judice* we are dealing with an amendment that increases a statutory benefit, rather than reducing one, as was the case in *McComas.* We nevertheless find instructive the discussion in *McComas* identifying when a statutorily bestowed benefit vests. Like the right to compensation under the Criminal Injuries Compensation Act granted the crime victim in *McComas,* Landsman's right to compensation from the Fund is a creature of statute. Amendments to such rights are not bound by the usual presumption against retrospective application, and these rights are subject to change "at the whim of the legislature." Furthermore, *McComas* teaches that Landsman's right to an award under the Act vested only when the Commission determined that he was eligible to be compensated. By that time the amendment increasing the maximum award from the Fund had been in effect for nearly a year.

Nor do we agree with the Commission that the 2000 amendment affected any substantive rights or liabilities of Somerville. Among other arguments, the Commission contends that the amendment acted as an increased penalty to Somerville and other similarly situated contractors. We reject that argument, for several reasons.

First, it cannot be gainsaid that "there can be no vested right to do wrong." *Randall v. Kreiger,* 23 Wall. 137, 90 U.S. 137, 149, 23 L.Ed. 124 (1874); *accord Tyrone W.,* 129 Md.App. at 289, 741 A.2d 553. Second, as Landsman points out, the right to seek an award from the Fund is in addition to Landsman's right to recover damages from Somerville by filing suit for the full loss resulting from Somerville's abandon-

ment of the work that had been the subject of the parties' contract. Consequently, the remedy provided under the Home Improvement Law creates no financial liability on the part of the contractor beyond that which the contractor faces in a court of law.[7]

The Commission points out that an award from the Fund results not only in a monetary debt to the contractor, but also in a potential license suspension.[8] It is this "penalty," the Commission argues, that affects the contractor's substantive rights. We do not see the issue quite as the Commission does.

To be sure, we recognized in *Brzowski* that, "[w]hen the Commission orders payment from the Fund, serious repercussions can be visited upon the contractor responsible for the actual loss that the Fund payment sought to compensate." 114 Md.App. at 629, 691 A.2d 699. "[I]f the Commission pays any amount from the Fund on account of a contractor's conduct, the Commission may suspend the contractor's license

---

7. We have said that § 8–405(a) of the Home Improvement Law dictates that an award under the Fund can only be approved to the extent of an "actual loss" by the claimant. Under § 8–401, "actual loss" includes "the costs of restoration, repair, replacement, or completion that arise from an unworkmanlike, inadequate, or incomplete home improvement." In calculating a claimant's actual loss, the Commission may not include consequential or punitive damages, personal injury, attorney's fees, court costs, or interest. COMAR 09.08.03.03B. If the claimant seeks compensation for those items that fall outside the scope of actual losses, the claimant must seek relief either through the courts or arbitration. *Brzowski*, 114 Md.App. at 631–32, 691 A.2d 699.

8. Both before and since the 2000 amendment to § 8–405(e)(1), the Home Improvement Law has provided that a contractor is required, on pain of license suspension, to repay the Fund for the full amount, with interest, of any claim paid from the Fund. Specifically, § 8–411(a) provides:

Except as provided in subsection (b) of this section, if the Commission pays a claim against the Fund based on an act or omission of a contractor, the Commission may suspend the contractor license until the contractor reimburses the Fund in full for:
(1) the amount paid from the Fund; and
(2) interest on that amount at an annual rate of at least 10% as set by the Commission.
For purposes of this case, the exceptions to § 8–411(a), as set forth in subsection (b), do not apply.

if he fails to reimburse the Fund in full." *Id.* This, naturally, "can have dire consequences for a contractor," since "[a] person may not act as contractor in this state without a contractor's license." *Id.* And, once the Commission pays a claim against the Fund, the rights of the claimant against the contractor are subrogated to the Commission to the extent of the amount paid to the claimant from the Fund; consequently, the Commission may sue any contractor on whose account a claim was paid, if the contractor does not reimburse the Fund in full, including interest. *Id.* at 630, 691 A.2d 699.

Yet, nothing in the legislative history of the Home Improvement Law evidences an intent by the General Assembly to treat the Fund as a penalty to contractors. The Senate Economic and Environmental Affairs Committee construed an actual loss to mean, simply, " 'the amounts paid or payable for the cost of "making good." ' " *Id.* at 639, 691 A.2d 699 (quoting Senate Economic and Environmental Affairs Committee, Bill Analysis for Senate Bill 507 at 3 (1985)).

Moreover, there are safeguards in the Home Improvement Law to insure that the Commission does not treat the Fund as a means of penalizing contractors. As we explained in *Brzowski,*

Section 8–409 [9] of the Act serves as a check on the Commission's ability to use the Fund as a club to punish contractors who are on the losing end of arbitration awards or judicial decisions. To this end, the section specifies the

---

**9.** Section 8–409(a) provides:

*In general.*—The Commission may order payment of a claim against the Fund only if:

(1) the decision or order of the Commission is final in accordance with Title 10, Subtitle 2 of the State Government Article and all rights of appeal are exhausted; or

(2) the claimant provides the Commission with a certified copy of a final judgment of a court of competent jurisdiction or a final award in arbitration, with all rights of appeal exhausted, in which the court or arbitrator:

(i) expressly has found on the merits that the claimant is entitled to recover under § 8–405(a) of this subtitle; and

(ii) has found the value of the actual loss.

requirements that must be met before the Commission may order payment of a claim against the Fund.

*Id.* We went on to state:

When the Commission conducts its own hearing on whether a claimant should be compensated from the Fund, it is presumed that the Commission is aware of the Fund's limited purpose, to compensate for actual loss as defined by section 8–401. Thus, any award the Commission makes from the Fund must be for actual loss, because the Commission is presumed to know the scope of its authority, and act within those bounds.

*Id.* at 631, 691 A.2d 699.

In short, the potential for a license suspension does not create "a penalty" for contractors. *Cf. State v. Jones,* 340 Md. 235, 251–54, 666 A.2d 128 (1995) (explaining that professional license suspensions and revocations generally serve remedial, not punitive, purposes).

The Commission also argues that the award of a license creates a substantive right, presumably in retention of that license. The Commission cites a treatise, which states that

[o]nce the state issues a license, the continued possession of and the right to operate under the authority of the license may be essential to the livelihood of the licensee. Suspension or revocation of a license by the state necessarily involves state action that affects *an important interest* of the licensee.

WILLIAM OTIS MORRIS, REVOCATION OF PROFESSIONAL LICENSES BY GOVERNMENTAL AGENCIES, § 2–1, at 15–16 (1984) (emphasis added).

We, however, draw a distinction between "an important interest" and "a substantive right." The Administrative Procedure Act defines a license as "all or any part of permission that: (1) is required by law to be obtained from an agency; (2) is not required only for revenue purposes; and (3) is in any form, including: (i) an approval; (ii) a certificate; (iii) a charter; (iv) a permit; or (v) a registration." Md.Code (1984, 1999 Repl.Vol.), § 10–202(f) of the State Government Article.

*See* BLACK'S LAW DICTIONARY at 931 (7th ed.1999) (defining a license as "[a] revocable permission to commit some act that would otherwise be unlawful").

It has thus been said that a professional license is not "an absolute vested right," but is at most "only a conditional right which is subordinate to the police power of the State to protect and preserve the public health" and welfare. *Dr. K. v. State Bd. of Physician Quality Assurance*, 98 Md.App. 103, 120, 632 A.2d 453 (1993), *cert. denied*, 334 Md. 18, 637 A.2d 1191, *cert. denied*, 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994). Because a license is only the grant of permission to act, the Commission's authority to suspend a contractor's license for non-repayment into the Fund does not interfere with a substantive or vested right of the contractor.

The Commission asserts that "[r]etroactive application of the increased award limit to a January 1997 contract would raise serious due process issues, because it would impose additional liability upon a contractor that he could not reasonably have foreseen at the time of the contract, in January 1997." The Commission specifies that at the time the home improvement contract was entered into, neither Landsman nor Somerville "could have had the slightest inkling the General Assembly was preparing to increase the Guaranty Fund limit to $15,000 some 44 months later." The Commission further argues that Somerville entered into the contract in 1997 under the belief that the extent of its liability to the Fund was $10,000.00; therefore, a statutory increase of $5,000.00 to the contractor's maximum liability, without notice or reasonable expectation, constitutes a due process violation.

Landsman responds that applying the 2000 amendment in this case would not deprive Somerville of any vested right in the additional $5,000.00, because the Commission itself has already determined that Landsman has incurred an actual loss of more than $42,000.00 due to Somerville's abandonment of the home improvement project. We agree with Landsman.

"The Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how

'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua*, 370 Md. at 623, 805 A.2d 1061. The Court of Appeals stated in *Dua* that

[i]t is clear that retrospective statutes abrogating vested property rights (including contractual rights) violate the Maryland Constitution.... [T]he particular provisions of the Constitution which are violated by such acts are Article 24 of the Declaration of Rights and Article III, § 40, of the Constitution.... A statute having the effect of abrogating a vested property right, and not providing for compensation, does "authorize private property, to be taken ..., without just compensation" (Article III, § 40). Concomitantly, such a statute results in a person or entity being "deprived of his ... property" contrary to the "law of the land." (Article 24).

*Id.* at 629–30, 805 A.2d 1061. We discern no such due process concerns in this case.

Of relevance here is the principle that " '[c]laims contrary to justice and equity cannot be regarded as' " vested, because " '[t]he only right taken away is the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party.' " *Tyrone W.*, 129 Md.App. at 289, 741 A.2d 553 (quoting *Randall*, 90 U.S. at 149). Landsman and Somerville contracted for Somerville to undertake a home improvement project for Landsman at an agreed upon price. Somerville abandoned the project before completion and refused to repay Landsman for the work that Somerville failed to complete. The actual loss to Landsman was $42,395.41.

It is plain that the only deprivation of property at issue is that of Landsman. Somerville simply does not have a vested right in being shielded from the additional $5,000.00 owing to the Fund upon payment of Landsman's claim. Consequently, Somerville was not entitled to either notice or a reasonable expectation of retaining that sum.

The Commission also intimates some due process problem attendant to the potential for license suspension upon a contractor's failure to reimburse the Fund the full $15,000.00 in a situation comparable to the one presented by this case.[10] To the extent the Commission makes such an argument, we reject it.

We fail to see how a contractor is entitled to a license where there has been a determination by the Commission that the contractor's acts or omissions have caused actual loss to a claimant. A license is essentially a privilege, not a "vested right." We therefore conclude that suspension of a contractor's license pursuant to § 8–411 does not infringe upon a property right protected by the Maryland Constitution.

For the reasons we have discussed, we conclude that the 2000 amendment to § 8–405(e)(1) is a remedial act that does not interfere with a vested or substantial right of either the homeowner or the contractor. We shall therefore apply the rule that such acts will be construed as having retrospective application unless the legislature has made it clear that the legislation be prospective. *Aviles*, 281 Md. at 533, 379 A.2d 1227.

The enacting legislation provides that the effective date of the Act is October 1, 2000. Aside from that, the General Assembly did not expressly declare in the enacting legislation (or, for that matter, indicate in any way in its legislative history) that the maximum award provided by the amendment to § 8–405(e)(1) would be prospective only.[11] We hold, there-

---

**10.** We have said that Somerville's license expired in June 1997. The Commission states that this fact does not foreclose the Commission from raising the license suspension argument. Landsman does not argue differently. We therefore assume, without deciding, that the expiration of Somerville's license does not preclude the Commission's argument.

**11.** Certainly, when the legislature intends statutory increases in benefits to be merely prospective, it knows precisely how to make that intent evident. *See* 1973 Md. Laws, ch. 671 (amending the workers' compensation statute to allow injured workers to continue collecting benefits under a permanent total disability award for as long as they remain

fore, that the Commission erred when it refused to apply the increased maximum recovery from the Fund to Landsman's claim.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE MARYLAND HOME IMPROVEMENT COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

---

permanently disabled, as determined by the Workers' Compensation Commission, and expressly providing that this new, higher "cap" is not applicable to claims involving accidental injuries sustained before the effective date of the amendment); *Waters v. Pleasant Manor Nursing Home*, 361 Md. 82, 104–05, 760 A.2d 663 (2000) (discussing same).